## ISRAEL *v.* ARTHUR.

*(Supreme Court of Colorado, December 4, 1883—Error to the County Court of Larimer County.)*

1. SERVICE OF SUMMONS BY PUBLICATION—STRICT COMPLIANCE WITH STATUTE REQUIRED. In obtaining constructive service of process by publication, a strict compliance with the method pointed out by the statute must be observed. While experience demonstrates that this mode of giving jurisdiction of the person is often necessary, yet the courts are jealous of abuses in its application, and tolerate the omission of no material step required by law in connection therewith.

2. SAME—COLLATERAL ATTACK. If the record, being offered in evidence, shows affirmatively that the statute regulating service by publication was not complied with, the finding by the Court that service was duly had, is not conclusive. Such record stultifies itself, and is not protected by the rule that such findings are decisive of the question in collateral proceedings.

3. LEGISLATIVE POWER BY RETROACTIVE STATUTE, OVER JUDICIAL PROCEEDINGS. The Legislature may, by statute, validate judicial proceedings where the statute is only in aid thereof and tends to support the same by precluding parties from taking advantage of errors or irregularities which do not affect their substantial rights. But it cannot by retrospective legislation give vitality to previous judicial proceedings which were void for want of jurisdiction over the parties: (1.) Because this would be an exercise of judicial power. (2.) Because it would deprive parties of their "day in Court."

HELM, J. This action was brought by plaintiff in error in the Court below, for the purpose of establishing her right to the estate of John Arthur, deceased, as sole surviving heir at law. Plaintiff was married to the said Arthur in 1859; there was no issue from the marriage, and unless divorced, plaintiff was his wife at the date of his decease, and entitled under the statute, there being no will, to inherit his entire estate.

Defendants in the Court below were deceased's brother, who was also administrator of the estate, and certain nephews and neices, who were interested therein as heirs, provided plaintiff failed in establishing her right thereto.

At the trial the Court admitted, over plaintiff's objection, the records and judgments in two divorce actions brought against her by the said John Arthur during his lifetime.

The first of said actions was instituted in the Probate Court of Larimer county, and on February 9th, 1875, a decree of divorce was granted therein. The second was brought in the County Court of said county, and on June 12th, 1877, a similar decree was again entered.

Two of the errors assigned, attack the correctness of the Court's rulings, admitting in evidence the records of the divorce suits.

The Code of Civil Procedure did not become a law until October, 1877, and consequently both of these actions were brought, and the service of process therein was attempted under the practice prevailing in Colorado before that instrument was adopted. Each of the records admitted in evidence shows on its face that the summons was issued and returned on the same day, and that the Court relied for its jurisdiction over the person of defendant, upon an attempted service of notice by publication.

In obtaining constructive service in this way, a strict compliance with the method pointed out by statute must be observed. While experience demonstrates that this mode of giving a Court jurisdiction of the person is necessary in many instances, yet Courts are jealous of abuses in the application thereof. They tolerate the omission of no material step required by law in connection therewith. The statute at the time these actions for divorce were commenced, commanded the "usual exertion on the part of the sheriff to serve the summons," notwithstanding .the proceedings by publication. (Revised Statutes of Colorado, Ch. 13, Sec. 8.) And it has been held by this Court that in divorce suits under that practice, "a return *non inventus* before the return day of the writ, would not support a notice by publication, and left the Court without authority to proceed to judgment." *Clayton et al.* v. *Clayton's heirs, etc.,* 4 Colo., 410; *Vance's heirs* v. *Maroney, etc.,* 4 Colo., 47; *Palmer* v. *Cowdrey,* 2 Colo., 6.

Neither the Probate nor the County Court in these actions had obtained jurisdiction over the person of defendant; both were without authority to "proceed to judgment," and consequently both decrees were absolutely void.

But it is argued by counsel, first, that these decrees are not subject to collateral attack in this proceeding; second, that in any event, the finding of the County Court in the latter, that "due service by publication has been had on said defendant," is conclusive upon the question of service, and fortifies *that* decree against such an attack.

There is some conflict of authority upon the question as to

whether, in an attempt to secure constructive service by publication, any presumption of regularity will be indulged in, the record being entirely silent. It has been held that a compliance with the material requirements of the statute must appear on the face of the record. On the other hand, Courts of high authority have announced that such presumptions are applicable to the proceedings of Courts of superior jurisdiction, whether such proceedings rest upon actual or constructive service. It is unnecessary, however, for us in the case at bar to determine this question.

For where the record is not silent on this subject, and where it affirmatively appears therein that the Court did not have jurisdiction of the person, certainly no such presumption can be indulged in. *Clayton* v. *Clayton, supra; Galpin* v. *Paige*, 18 Wallace, 336.

And the finding in one of these records that due service of process has been had, is not conclusive. We are not prepared to accept without qualification, the doctrine upon this subject stated in *Goudy et al.* v. *Hall*, 30 Ill., 116, relied upon by counsel for plaintiff in error; the opinion in that case *seems* to hold, that the finding in the record of due and legal service is only *prima facie* evidence of that fact, and may be attacked in a collateral proceeding. Interpreted or understood without condition, it modifies the beneficent rule that judicial records import absolute verity; and its effect would be to subject them in many instances to collateral attack when upon principle and authority they should be held conclusive.

In *Harris* v. *Lester et al.*, 80 Ill., 307, the Court use the following language with reference to a similar finding of service by the Court which tried the cause: "In all collateral proceedings, we entertain no doubt such finding is sufficient evidence of service by publication, as to defendants, nothing appearing in the record to the contrary, and to warrant the decree as in cases of regular notice by publication." This may fairly be said to modify the position taken in *Goudy* v. *Hall*; and is, we think, in accord with the weight of authority.

It sanctions the view that where, as in the case under consideration, the record expressly recites the facts relied upon as constituting service, and those facts show clearly that no jurisdiction of the person was obtained thereby, it would be absurd

to pronounce conclusive and binding, a declaration therein that legal service was had. The record stultifies itself and is not protected by the rule that such findings are decisive of the question in collateral proceedings.

The divorce records before us, were offered by the parties to be directly and materially benefitted thereby, and we are clearly of opinion that they were subject to collateral investigation.

In 1877 the Legislature passed the following act, which was approved by the Governor on the first day of March, viz:

"Whereas, the Probate Courts of certain counties have heretofore exercised jurisdiction in divorce cases, and various parties have obtained decrees of said Courts granting divorces with the belief that the Courts possessed jurisdiction in relation to said matters; and, whereas, doubts exist as to the validity of said proceedings, and as to the right of said Courts to exercise jurisdiction in the said matters;

"Therefore be it enacted as aforesaid;

"That all proceedings of any Probate Courts, the jurisdiction of which is, or may be questioned as aforesaid, heretofore had in any case, so far as the same or any part thereof relate to the matters aforesaid, and to the jurisdiction of the Court therein, be, and the same are in all respects legalized." General Laws, Sec. 925.

It was generally supposed that the Probate Courts of the Territory of Colorado had no jurisdiction in divorce proceedings; that such actions could only be brought and determined in the District Court. The correctness of this supposition is questionable in view of the chancery jurisdiction conferred upon Probate Courts by the amendment to the territorial organic act, approved March 2, 1863. Rev. Statutes, p. 38, Sec. 3.

But the State Legislature, as appears from the foregoing act, shared sufficiently in the general belief on the subject, to attempt to neutralize the effect of the supposed errors in question.

Counsel for defendants in error contend that this legislative enactment rendered valid and binding the decree of the Probate Court in 1875. They argue that although in that case the Court may have had no jurisdiction either of the subject matter, or of the person of defendant, this act was intended to, and did cover and cure these defects.

Our State Constitution provides that the General Assembly shall pass no local or special laws for granting divorces. This provision deprives the Legislature of the authority existing un-

der the territorial organization to divorce husband and wife by statute. It still has power to declare what shall be necessary to constitute a valid marriage, and what grounds shall be sufficient to authorize a divorce; it may also provide the method of procedure by the Courts upon application thereto for such relief. But it cannot, under this constitutional provision, assume judicial powers, and sever the bonds of matrimony in a given case.

If the Legislature, in 1877, could not do this directly, could it accomplish the same result indirectly? Could it by statute give vitality to the decree of a Court which was absolutely lifeless and void for want of jurisdiction over the person against whom it was rendered?

The Legislature may by statute validate judicial proceedings where the statute is only in aid thereof and tends to support the same by precluding parties from taking advantage of errors or irregularities which do not affect their *substantial rights*. But it cannot, by retrospective legislation, give validity to previous judicial proceedings which were void for want of jurisdiction over the parties. Two reasons may be assigned for this inhibition:

*First*—Because it would be an exercise of judicial power not contemplated by our constitution. (See Art. 3.)

*Second*—Because it would operate to deprive parties of their "day in Court;" property rights might be divested without notice to those interested, and without giving them the opportunity to be heard. See Sec. 25, Bill of Rights; *Mason* v. *Eldred*, 6 Wallace, 239; Cooley on Const. Lims., * 107, and cases cited in notes.

A decree of divorce generally affects the property rights of the parties as well as their marital relations. *Israel* v. *Arthur*, 2 Colo. L. R., 319.

"Upon this question we cannot doubt or hesitate. They (the Legislature) can no more impart binding efficacy to a void proceeding than they can take one man's property from him and give it to another. Indeed, to do the one is to accomplish the other." *McDaniel* v. *Correll*, 19 Ill., 226.

"If it was competent for the Legislature to make this declaration, then it was competent for it to have declared that to be a judgment which before was no judgment, and binding upon

the party against whom it was rendered, when before he was not bound at all; for such is the direct result. It is a proposition not to be discussed at this day, that the Legislature has no such power." *Nelson* v. *Roundtree,* 23 Wis., 370. See *Pryor* v. *Downey,* 50 Cal., 403; Wade on Retroactive Laws, Sec. 164.

The statute of 1877 cannot be held to cure the defect of want of jurisdiction over the person of defendant in the divorce action of 1875. It is doubtful if the Legislature intended this statute to produce any such consequence. The act itself, viewed in the light of the *"whereases"* prefixed thereto, seems to indicate that it was simply the intention to remedy the defect of want of jurisdiction over the subject matter, where the Court had complied with the law in obtaining jurisdiction over the person. It is unnecessary for us to consider the constitutionality of the act in this view of its supposed design and operation, further than is necessarily implied by the foregoing discussion.

The records of the divorce proceedings should have been excluded by the Court; for errors in admitting them the judgment must be reversed, and the cause remanded.

We may deplore the effect of these conclusions in this particular case. But the consideration of hardship to these defendants therefrom must not be permitted to influence our judgment upon the questions presented. In the language of Mr. Justice Elbert in *Clayton* v. *Clayton, supra:* "It cannot avail against the greater hardship of concluding parties by adjudications of their most sacred rights, in proceedings of which they have no notice, and to which they have never appeared."

*Reversed and remanded.*

*Haynes, Dunning & Haynes,* for plaintiff in error.

*Wells, Smith & Macon, Rhodes & Love,* and *E. A. Rallard,* for defendants in error.