HENRY C. ROCHE, and LAURA S. ROCHE, his Wife, and
GEORGE PRESSTMAN and HELEN PRESSTMAN, Infants,
by JOHN S. TYSON, their legal Guardian *vs.* WILLIAM
FRANCIS WATERS, and MARY AUGUSTA WATERS.

*Sale of Infants' real Estate—Jurisdiction—Constitutional
law.*

By the Act of 1816, ch. 154, power was given to the equity Courts
to decree a sale of an infant's real estate upon petition of his
guardian or *prochein ami*, provided the infant be summoned and
appear by guardian *ad litem*, and it be made to appear to the
Court that it will be for the interest and advantage of the infant
that the sale should be made.   HELD:

That a decree for the sale of the real estate of infants could not be
supported under this statute, where the bill was not filed by the
*prochein ami* or guardian of the infants, and they were not sum-
moned, and there was no appearance for them by guardian *ad
litem*, appointed by the Court.

While the Court of Chancery, prior to the jurisdiction conferred
by statute, had power, under some circumstances, to sell an
infant's land, where his interest demanded it, it could not decree
a sale where an adult had a part interest in the land.

The Act of 1868, ch. 249, provides that whenever, upon the peti-
tion of infants, by their guardian or next friend, a decree has
been passed for the sale of their land, and a sale thereof has been
made in pursuance of said decree, and the same has been con-
firmed, and it shall appear there was a failure to summon said
infants, and have them answer by a guardian appointed by the
Court which passed said decree, it shall be lawful for the Circuit
Courts of the State, as Courts of equity, to confirm said sale;
and all proceedings had thereon, upon the petition of the guar-
dian or next friend of the infants, or of any party having an
interest in said sale, and after summoning the infants, and their
appearance by guardian, and its being shown that the sale was
fairly and *bona fide* made, and that at the date of said decree it

was for the benefit and advantage of said infants to sell said land, shall be. as valid and binding upon all parties, and shall confer as good title upon the purchasers, as if the proceedings . upon which the original decree was passed had been in strict conformity to the requirements of law.    HELD:

That the Act, so far as it authorizes the Court to change the effect of decrees, which had become final, is an exercise of judicial power by the Legislature, and is unconstitutional and void.

APPEAL from the Circuit Court of Baltimore City.

This appeal was taken from a decree of the Court below (DENNIS, J.,) dismissing the bill of the complainants. The case is stated in the opinion of this Court.    The Act of 1868, ch. 249, provides that "whenever, upon the petition of any infant or infants, by their guardian or next friend, a decree has been passed    *    *    *    for the sale of the lands, tenements, or real estate of said infant or infants, or of his, her or their interest in the same, and a sale thereof has been    *    *    made in pursuance of said decree, which said sale has been    *    *    *    confirmed by the Court in which such decree was had, and it shall appear that there was a failure to summon said infant or infants, and to have them answer by a guardian appointed · by the Court by whom the said decree had been passed, it shall and may be lawful for the Circuit Courts of this State, sitting as Courts of equity, to confirm said sale; and all proceedings had thereon, upon the petition of the guardian or next friend of such infant or infants, or upon petition of any party having an interest in said sale, and after summoning such infant or infants, and his, her or their appearance by guardian to be appointed by said Courts, and such other proceedings had as required for a decree of sale of infants' real estate; provided, upon a hearing and examination of all the circumstances, it shall appear to said Courts that said sale was fairly and *bona fide* made, and that at the date of said decree it was for the benefit and advantage of said infant or infants to

sell said lands, tenements, and real-estate, or for his, her,
or their interest in the same; and, upon the confirmation
of said sale, all the proceedings had, in pursuance of said
decree, and in conformity thereto, including the deeds of
the trustees there made, or thereafter to be made, shall
be as valid and binding upon all parties, and shall confer
as good title upon the purchasers, as if the proceedings
upon which the original decree was passed had been in
strict conformity to the requirements of law.''

The cause was originally argued before ROBINSON,
IRVING, BRYAN, FOWLER, and McSHERRY, J., It was
re-argued on notes, and ALVEY, C. J., participated in the
decision.

*George Whitelock,* for the appellants.

*Thomas S. Baer,* for the appellees.

BRYAN, J., delivered the opinion of the Court,

The appellants filed a bill in equity, in the Circuit
Court of Baltimore City for the sale of certain real estate
lying in said City. The land in question was devised by
the will of one Solomon Betts, and the appellants set up
a title to a portion of it by virtue of certain proceedings
in the Superior Court of Baltimore, on the equity side
of the Court. The appellees are devisees under the said
will. The Circuit Court dismissed the bill of com-
plaint.

As the appellants' title is founded on these proceedings,
it is necessary to examine them with particularity.
Solomon Betts, who died in the year 1841, devised a
tract of land in the City of Baltimore, to certain trustees
for the sole and separate use of his daughter Sarah Hitch
for the term of her natural life, without being subject to
the control of her husband, and without being liable for

Roche, *et al. vs.* Waters.

his debts; and after her death for the sole and separate use of the testator's granddaughter Augusta Hitch for the term of her natural life; and after her death, for the use of her lawful issue, and for the heirs and assigns of such issue forever, if any child or descendant of hers should be living at the time of her death, and if none, then in trust, for the sole and separate use of the testator's daughter Mary Davies for the term of her natural life, and after her death for the use of his grandson Solomon Betts Davies, his heirs and assigns forever.    By appropriate proceedings William George Krebs was substituted in the place of the trustees named in the will. In May, 1859, a bill in equity was filed in the Superior Court of Baltimore City in which Sarah M. A. Hitch, Augusta Waters, William Francis Waters, Mary Augusta Waters and Edmund C. Waters, (the three last mentioned being infants) and William George Krebs, trustee, were named as complainants; Sarah Hitch and Augusta Waters were married women, the said Augusta being the Augusta Hitch named in the will of Solomon Betts.    The defendants were Mary Davies and Solomon Betts Davies.    The bill alleged that an ordinance had been passed for the opening of certain streets through the land devised by the will of Solomon Betts, and that the paving and grading of one of them had been commenced; that the property was liable for the expenses of paving and grading, that a large arrearage of taxes had accrued on the property from the year 1849, until the filing of the bill; and that Mrs. Hitch and Mrs. Waters had effected a loan of seventeen hundred dollars, secured by their life interests, to prevent a sale of the property and a sacrifice of the rights of all persons interested therein.    It was further alleged that it would be for the interest and advantage of all parties concerned that a sale should be made of such part of the property as would be necessary to make the required payments.    The prayer

of the bill was that the sale might be made under and by virtue of the provisions of the Acts of Assembly in such case made and provided. The bill was signed by "Hugh Davey Evans, *prochein ami* of infants" and by the trustee, and the married women, and by complainants' solicitor. The defendants in their answer denied the right of the life tenants to encumber the property by their failure to pay the taxes, and by allowing assessments to accrue which were alleged to be uncalled for at the time; and also maintained that the sale of the property was not sanctioned by any Act of Assembly. A sale was decreed in March, 1860, of so much of the property as might be required to pay the paving and grading taxes and assessments, and all other claims due and owing to the City of Balimore, and also of so much of the property as would repay the money borrowed to pay arrearages of taxes. Sales were made to George Presstman and George U. Porter and ratified by the Court. (The land sold to Presstman has been acquired by the appellants, and is that to which they claim title in the bill of complaint in this suit.) After the ratification of the sales, a petition was filed in the names of Mrs. Hitch and her husband, Mrs. Waters and her husband, and the three infants by their next friend, reciting the above mentioned proceedings, and praying for a decree or order authorizing the mortgage of the property for a sum sufficient to pay the taxes and sums due for grading and paving. A subpœna was issued for the infants, and a guardian *ad litem* appointed for them, who filed an answer in the usual form. No further proceedings under this petition appear in the transcript of the record sent to this Court.

We shall pass by without special comment the irregularity of a suit by married women in their own names, and without making their husbands parties on either side of the record. Matters of more serious moment now

Roche, *et al. vs.* Waters.

demand our consideration. The city taxes were due by the life tenants, and they were bound to pay them in full without contribution from these infants. The prayer of the bill is that the property in question may be sold for the purpose of paying certain paving and grading assessments, and also of reimbursing the life tenants for the expenditure which they made in payment of their own debt. The reason alleged for the sale; the sole ground on which it is asked; the special jurisdictional fact which is supposed to authorize it, is that it would be "for the interest and advantage of all parties concerned." We shall proceed to inquire into this ground of jurisdiction. It is aside from the present purpose to consider the question whether by virtue of its general care and superintendence of infants and their property, the Chancery Court of England has power to sell their inheritance, when it appears to be manifestly to their interest that it should be sold. Because it is firmly held in this State that a Court of equity had the right to convert the real estate of an infant into money previously to the legislation on the subject of these sales. But the jurisdiction has been very greatly enlarged by a series of statutes. Of course, we have no concern with any of these statutes which were passed subsequently to the decree in question. The Act of 1785, ch. 72, is entitled "An Act for enlarging the power of the High Court of Chancery." By the twelfth section the Court is authorized, on the conditions therein named, to sell lands in which an infant, idiot or person *non compos mentis* has a joint interest in common with any other person or persons. In *Gill vs. Wells*, 59 *Md.*, 499, it was held that the jurisdiction thus given does not exist where the parties hold separate consecutive interests in the land, but is confined to cases where they hold concurrent interests. The Act of 1816, ch. 154, was entitled "An Act to authorize the Chancellor and the several County Courts of this State

to order and decree the sales of real estate of minors in the cases therein mentioned.'' The effect of this statute, so far as the present question is concerned, is neatly summarized in the opinion in the case just cited, and we will quote an extract from it. Speaking of the decree passed in that case, the Court say: ''But the Act of 1816, ch. 154, and section 9 of the Act of 1831, ch. 311, exactly meet the case, and it is to them the jurisdiction to pass this decree must be referred. By the first section of the Act of 1816, power was given to the equity Courts to decree a sale of an infant's real estate upon petition of his guardian or *prochein ami*, provided the infant be summoned and appear by guardian *ad litem*, and it be made to appear to the Court that it will be for the interest and advantage of the infant that the sale should be made; and by section thirteen of the same Act, as amended and enlarged by section nine of the Act of 1831, it was provided that the whole estate might be sold with the consent of the life tenant, where the infant was the reversioner.'' 59 *Md.*, 499.

The decree cannot be supported under this statute, because the essential preliminaries required by the first section were not observed. The bill ought to have been filed by *prochein ami* or guardian, and the infants should have been summoned, and there ought to have been an appearance for them by guardian *ad litem*, appointed by the Court. The statute does not require that an infant should sue himself, as has been suggested by the appellants' counsel; but it directs that the guardian or *prochein ami* should file a petition and bring the infant before the Court as a defendant, and that the allegations of the petition should be proved as facts are proved against defendants. A most wise and salutary provision, as the present case may well serve to illustrate. It is vain to argue that the decree can be maintained under the jurisdiction which chancery had prior to the

passage of these statutes.   While the Court had power
under some circumstances to sell an infant's land, when
his interest demanded it, no precedent or analogy justi-
fied a sale where an adult had a part interest in the
land.   It was contrary to the theory and practice of
chancery to sell a man's interest in land on the ground
that it would benefit somebody else, or even that it
would benefit himself.   Even in cases of partition, sales
could not be decreed until a statute gave the jurisdic-
tion.   The Act of 1785 and the Act of 1816, and their
supplements authorized sales where adults and infants
owned interests in the same land; and the Act of 1831,
chapter 311, section seven, first conferred power to de-
cree a sale where all the owners were of full age, in case
it was to the advantage of all of them.   As a matter
of course, infants may sue both at law and in equity
when their rights are invaded; and they may be sued,
and their responsibilities (as recognized by the law of
the land) may be enforced against them.   But in this
case the infants were not asserting a right against an
adversary.   On the contrary, they were alleging that
certain liens existed against their own property; they
were setting up a burden upon themselves, and they
were praying that their own property should be sold,
because it was for their benefit, and that of the other
owners, that the sale should be made.   No interests
whatever were involved in the case except those of the
owners, and the only question proposed for the Court's
consideration was whether these interests would be pro-
moted by a sale.   The only jurisdiction of the Court
over such a question was conferred by the Act of 1816
and its supplements; and the infants were not subjected
to this jurisdiction in the mode made necessary by this
statute.   It may be worth while to remark that under
the Act of 1816, the infant's benefit alone was made the
ground of sale; while under the Act of 1785, the benefit

of all persons concerned was the inducement to the sale.
It could not in this case be for the interest of the in-
fants that the land should be sold to reimburse the life
tenants for paying taxes, which it was their duty to pay
without contribution from the infants.    The bill was
filed before the adoption of the Code of 1860, but the
decree was passed after it went into effect.    However,
the first section of the first Article of this Code provided
that all suits and actions pending should be prosecuted
to final determination, as if the Code had not been
adopted.    Legislation since the passage of the decree
has extended considerably the powers of the Court in
regard to sales alleged to be advantageous to the parties
in interest; for instance, there are the Acts of 1862,
chapter 156, and 1868, chapter 273.    We have not al-
luded to the statutes authorizing sales of land under
bills for partition, because we are at a loss to conceive
how they can affect the present question.    It will be per-
ceived that we think that the decree of the Superior
Court was void for want of jurisdiction.    The subsequent
petition contains statements in the name of the infants
made by the *prochein ami;* these do not bind them and
can have no influence on their rights.

   It has been maintained that the sale under the decree
may now be ratified by virtue of the Act of 1868, ch.
249.    Twenty-nine years elapsed between the passage
of this void decree and the filing of the bill to indue it
with validity.    The proposition in the abstract is rather
startling.    The Act of 1868, by its terms, has a re-
troactive operation, and it authorizes the Court to change
the effect of decrees which had become final.    It is an
exercise of judicial power by the Legislature.    In *Dorsey
vs. Dorsey, et al.,* 37 *Md.,* 64, it was held that an Act of
Assembly authorizing and empowering this Court to re-
open and rehear cases, decided at a term already passed,
was unconstitutional and void; and the decision was well

warranted by a great number of very high authorities. In *Griffin vs. Cunningham*, 20 *Grat.*, 52, it was said: "But it is well settled that an Act of the Legislature directing a Court to rehear a cause or to grant a new trial, or any legislative action which retroacts upon past controversies, is an invasion of judicial power, which is arbitrary and unconstitutional." And a large number of decisions were cited to the same effect, including one from our own reports: *Miller vs. State, use of Fiery*, 8 *Gill*, 145. In *Denny vs. Mattoon*, 2 *Allen*, 379, it is said: "The Legislature have no power to grant a new trial or direct a rehearing of a cause which has been once judicially settled. The right to a review, or to try anew facts which have been determined by a verdict or decree, depends on fixed and well-settled principles, which it is the duty of the Court to apply, in the exercise of a sound judgment and discretion. These cannot be regulated or governed by legislative action." And the Court founds its opinion on well-established principles and well-considered adjudications. The Act of 1868, in its retrospective effect, would enable the Court, by new proceedings, to give validity to a decree which, when pronounced, was beyond its jurisdiction. An Act of the Legislature of Illinois of the same character came under consideration in *McDaniel vs. Correll*, 19 *Ill.*, 226. A short passage from the opinion will show the views of the Court: "If it was competent for the Legislature to make a void proceeding valid, then it has been done in this case. Upon this question we cannot for a moment doubt or hesitate. They can no more impart a binding efficacy to a void proceeding than they can take one man's property from him and give it to another. Indeed, to do the one is to accomplish the other." It is true, as stated in *Cooley on Constitutional Limitations*, that "a retrospective statute curing defects in legal proceedings, where they are in their nature irregularities

only, and do not extend to matters of jurisdiction, is not void on constitutional grounds, unless expressly forbidden." *Marg. p.* 371. But it is also true, as stated in the same work, that "in judicial proceedings, if there was originally a failure of jurisdiction, no subsequent law can confer it." *Marg. p.* 383. In *Dorsey vs. Gilbert, et al.*, 11 *Gill & John.*, 87, land of a deceased debtor had been sold by a trustee under a creditors' bill. One-fifth of the land belonged to the minor children of the deceased debtor in right of their mother, and of course was not bound for his debts, and could not be validly sold under the decree. An Act of Assembly was passed authorizing the Chancellor to confirm the sale, provided a petition was filed by the purchaser, and the answers of the infants were taken in the ordinary way, and provided he was satisfied by proof that the sale was fair and advantageous to the infants; under these circumstances he was required to award to the infants one-fifth of the purchase money of the whole tract. The Court say that this Act furnished infants with substantially the same safeguards as are provided by the Act of 1816, chapter 154. (Page 91.) The purchase of the land at the sale was simply an offer by the purchaser, which could have no effect unless accepted by the Court. The Act of Assembly authorized the Court to accept this offer, provided it was shown to be advantageous to the infants in a manner similar to that required by the Act of 1816; and on the acceptance of the offer and confirmation of the sale, the infants were to be awarded their due proportion of the purchase money. This case has been very earnestly pressed upon us, but it cannot be tortured into an authority that it is competent for an Act of Assembly to authorize by retroaction the ratification of a void sale, simply and absolutely, without requiring compensation to the owners of the land.

This case was decided at the last term of the Court, and was ordered to be reargued. We have endeavored

to be very explicit in the statement of our views, as the former opinion was very much misapprehended. At the reargument something was said about the appellants' claim for improvements made on the land, but there is nothing in the transcript of the record showing that improvements have been made, or in any way referring to the subject. We are not to be understood as saying that they will not be entitled to the value of any betterments which they may have made, on proper proceedings to that end.

*Decree affirmed,*
*with costs.*

(Decided 19th March, 1890.)