H. S. Ward, the petitioner in this case, guardian of Leon Howard, held in trust $1,200 in assets and funds of the estates of F. W. Howard and Bennie Howard, his wife, and, as his ward was about to attain his *Page 203 
majority, filed a final account with the clerk, intending to turn the funds over as soon as the account was approved. Before that was done, the respondent, Mary Hilton, (nee Mary Elizabeth Presnell), and her husband, Ralph Hilton, intervened, claiming a share of the estate by reason of an alleged adoption of the feme respondent by F. W. Howard and Bennie Howard. Petitioner, as a stakeholder, then applied to the court to determine the right of the parties respectively to the estate.
The pleadings also raise the question of the respective interests of Leon Howard and Mary Hilton in certain lands descended from Bennie Howard, who died intestate, consisting of three tracts of land, two in the village of Pinetown and one, a small farm, nearby, the title to which depends upon the same question as does the title and right to the personal property held by the intervener, Ward.
The case was heard upon agreed facts, the pertinent parts of which may be summarized as follows:
The petition for adoption alleged that Mary Elizabeth Presnell was a ward of the "Children's Home Society of North Carolina, Inc.," the office of which was located at Greensboro, North Carolina; that the child at that time was living with the petitioners and dependent upon the Children's Home Society of North Carolina for support, and that legal custody of the ward was vested in the society. The petition asks that Mary Elizabeth Presnell be given the name of Mary Elizabeth Howard, and the adoption is for life.
Formal consent to this adoption was given by the Children's Home Society of North Carolina, Inc. Thereupon, an order was made as follows: "Order Granting Letters of Adoption. State of North Carolina — Guilford County. In the Superior Court — Before the Clerk. In Matter of the Adoption of Mary Elizabeth Presnell. This cause coming on to be heard upon the allegations of the petition and being heard, and it appearing to the court that Mary Elizabeth Presnell is a child without any estate and it appearing that the legal custody of said child has been vested in the Children's Home Society of North Carolina, Inc., Greensboro, Guilford County, North Carolina, and that F. W. Howard and Mrs. Bennie Howard, his wife, of Pinetown, N.C. County of Beaufort, North Carolina, are suitable persons to have custody of said child, desires to adopt said child for life; and that the Children's Home Society of North Carolina, Inc., upon whom the said child is dependent for support, consents thereto.
"It is, therefore, ordered and adjudged by the court that letters of adoption be and the same are hereby granted to the said F. W. Howard and wife, Mrs. Bennie Howard, to the end that the relations of parent and child be established for life between the said F. W. Howard and wife, Mrs. Bennie Howard, and the said child, Mary Elizabeth Presnell, *Page 204 
with all the duties, powers, and rights belonging to the relationship of parents and child.
"This the 29 day of February, 1924. M. W. Gant, Clerk Superior Court."
Letters of adoption followed.
It is agreed that the mother had no notice of this adoption proceeding and did not consent thereto, unless consent can be inferred from a proceeding in the juvenile court of McDowell County, a record of which forms a part of the agreed facts.
The record shows that Mary M. Greenlee filed a petition with the court some time in December, 1923, alleging that Mary Elizabeth Presnell, a child under the age of sixteen years, then in the custody or control of the County Home of McDowell County, was a neglected and dependent child, without means of maintenance and support; that her father was dead and her mother "not physically, morally or financially fit or able to provide a suitable home"; and that the mother had been in the County Home of McDowell County for approximately twelve. months.
Upon this petition the child was brought into court on 17 December, 1923, "the said child appearing by and with its mother, who has legal custody of it," and the court, thereupon, found Mary Elizabeth Presnell a neglected child within the meaning of the law, made the child a ward of the court, and committed it to the "Children's Home Society of North Carolina," to remain in custody until further order of the court; and attached the following condition: ". . . the condition of such custody is that the Children's Home Society of North Carolina is given legal guardianship of the child with power to place it in a home for adoption."
It is agreed between the parties to this proceeding that the rights of the respondent, Mary Hilton, depend upon the following: "She was a minor with mother, and father dead prior to December 18, 1923, residing in McDowell County, North Carolina. That Mary Greenlee filed petition in juvenile court of McDowell County on that date. Copy of same follows as a part of the record, including the judgment of the juvenile court. She was committed to the Children's Home Society of North Carolina on the date of the judgment.
"It is admitted that the Children's Home Society of North Carolina is an institution chartered by the State and licensed and approved by the State Board of Charities and Public Welfare in accordance with section 5006, paragraph 5, Consolidated Statutes, and was in 1923 and 1924."
From a judgment sustaining the validity of the adoption and upholding the claim of Mary Hilton and dividing the assets of the estate equally between her and Leon Howard, the latter appealed. *Page 205 
Since early days, the attitude of the North Carolina Court toward the law of real estate, descent and inheritance, and distribution, has been classic. The result has been an exactness and a certainty with respect to this subject that gave to the decisions of the Court a very extended reputation.
Out of this legal atmosphere came the Adoption Law of 1872, and particularly that portion of our law existing at the time the adoption proceeding under consideration was had — chapter 2, section 184, Consolidated Statutes of 1919 — which fixes the most important of the conditions upon which adoption can be made effective. Subsequent decisions of the Court have attributed an imperative character to this condition, prompted by the relation of the proceeding to the laws of real estate and inheritance, requiring the proceeding to partake of the same certainty as the laws to which they were ancillary, and to the basic principles of which they offered a substitution.
Truelove v. Parker, 191 N.C. 430, 132 S.E. 295, construed the statute with which we are dealing and declined to rationalize it in any way to obviate the necessity of consent by a parent, if living, to validate the adoption. While as a social institution benefiting society much by the care and promise which it gives to neglected youth, these purposes are served by the custodial care and parental relations established in that regard; but inasmuch as the proceeding is in derogation of succession by heritable blood, the adoption proceeding, when it comes to the phase of descent and distribution of property, must be strictly construed.
The decision in Truelove v. Parker, supra, was a well considered and deliberate decision by the Court on a matter concerning property rights, and the principle of stare decisis must apply. The construction given to the law therein is simple and easily understood, and both the legal fraternity and all others having to do with adoption had full notice of the necessity of compliance with the provisions of the act requiring consent of the living parent or proof of abandonment.
There is no evidence here of abandonment of this child by her mother, and the sole question presented is whether or not she consented, or is presumed to have consented, to the adoption through the proceeding in the juvenile court, which took the custody of her child, or whether that proceeding rendered her consent unnecessary.
Doubtless the law originally contemplated that consent be made in the proceeding itself, as it was unaffected by any other statute bearing upon any termination of the relation between parents and children, or of the *Page 206 
complicated juvenile court acts and welfare acts of the present day, which here and there refer to the subject. That such consent must be made to appear to the adopting court, as a jurisdictional matter, is, we think, self-evident.
It cannot be contended from any evidence in the record, or derived from the juvenile court proceeding, that she had abandoned the child. The charge there was that the child was neglected. The mother was in the poorhouse. The sole contention is that because of the order of the juvenile court, in a proceeding of which she had notice and was present, the child was placed in a home for adoption — adoption when, where, how, why, to whom, or under what conditions, the order gave to the mother no information.
The purpose of the Juvenile Court Act was to protect both society and minor children, which form such a large part of it, from the effect of delinquency on the part of the child and neglect on the part of parents and custodians — not any more as to parents than as to others having the care and custody of children. It is in no respect an amendment to the Adoption Law, nor can it be considered as relieving against the stricter provisions of that Law, where the Adoption Law itself speaks upon the subject.
The procedure in the juvenile court, made a part of the record, discloses that on the petition of Mary M. Greenlee, Mary Elizabeth Presnell was brought into the court, in company with her mother, on 17 December, 1923, charged with being "a neglected child." Michie's Code, section 5039. At that time the petition shows that the mother had been in the County Home approximately twelve months. The order of the court placed the child in the Children's Home Society of North Carolina until further orders of the court, adding, "the condition of such custody is that the Children's Home Society of North Carolina is given legal guardianship of the child with power to place it in a home for adoption."
The consent of the mother is not evidenced in any other way, and it is assumed by respondent that this proceeding canceled her out of the picture.
An examination of the Juvenile Court Act of 1919 — chapter 97, Public Laws of 1919, see especially sections 5039, 5047, Michie's Code of 1935 — discloses that the juvenile court had no power to place the child anywhere for adoption; and that part of the order is outside of the pale of the court's jurisdiction, ineffective and void, and does not in any way affect the right of the mother as to the adoption proceeding suggested, or the necessity of her consent in that proceeding.
As to what time — relative to the adoption proceeding — consent of the living parent may be obtained, whether before or after the institution of such proceeding, we need not here consider. The consent must at least *Page 207 
be in fair contemplation of the proposed adoption, and this includes its most essential feature — the identity of the adoptive parents. Except in the case of abandonment, it is not without reason that society looks first to the concern and foresight of the natural parents in the selection for the child adoptive parents into whose hands they surrender the duties and burdens of custody, training, and tuition; and when we come to the question of property rights affected, the proceeding concerns a public policy, which does not rest alone upon custodial right.
The Juvenile Court Act — Michie's Code of 1935, sec. 5044 — requires that the parents, if living, be brought in by summons, in order to show cause why the child shall not be dealt with according to the provisions of the law, and if this summons is not obeyed, and there is no sufficient excuse, the parent may be proceeded against as for contempt. Chapter 97, section 8, Public Laws of 1919; Michie's Code, section 5046. The mother must, therefore, be regarded as being in the juvenile court ininvitum, and she is certainly not bound by any part of the decree of that court which is plainly without its jurisdiction.
It remains to be considered whether the status of respondent is affected by later statutes amendatory of the Adoption Law in effect when this proceeding was had — that is, the law construed in Truelove v.Parker, supra.
By chapter 171, Public Laws of 1927 (ratified 8 March, 1927), sections 185 and 189 of the Consolidated Statutes were amended and a section added, intending to validate "all proceedings for the adoption of minors in courts of this State." The amendments to sections 185 and 189 should probably be considered as prospective, but any argument as to the effectiveness of these amendments, conceding them to be intended as retroactive, is met by the same difficulties which attend the direct attempt to validate "all proceedings" in the second section of the act (misnumbered section 3).
Whether such a sweeping cure-all is not too general to be given effect as to defects not pointed out in the statute, we hardly need inquire. Other principles control.
Ordinarily, curative acts of the Legislature may be effectively applied where the Legislature might have dispensed originally with the portion of the required proceeding, the nonobservance of which has rendered the proceeding void. Taylor v. Tennessee Florida Land Investment Co.,71 Fla. 651, 72 So. 206; Gallimore v. Thomasville, 191 N.C. 648,132 S.E. 657; Kinston v. Trust Co., 169 N.C. 207, 209, 85 S.E. 399. But the Legislature is without power to cure a want of authority in the court to act at all, where the defect goes to the jurisdiction. Montgomery v. Townof Branford, 107 Conn. 697, 142 A. 574; People v. *Page 208 Van Nuys Lighting District of Los Angeles County, 173 Cal. 792,162 P. 97. We think it unquestionable that the jurisdiction given to clerks of the Superior Court in the matter of adoption is, by the statute itself creating it, made to depend upon the consent of the parent, if living. Truelove v. Parker, supra. Indeed, regardless of the question of jurisdiction as settled by the wording of the statute itself, it may be doubted whether the State can, through any sort of law, exercise the Spartan privilege of taking a child from the home and custody of a parent and engrafting it into another family without notice to the parent, or proof of the existence of a condition — as of complete abandonment on the part of the parent — that would render such notice unnecessary. Constitution, Article I, section 17.
In an adoption proceeding under this law, inheritance is a statutory consequence of the parental relation created between the parties and legally inseparable from it. In other words, inheritance is made a statutory incident to the more important relationship of parent and child established by the adoption. Want of original jurisdiction cannot be cured by subsequent attempts at validation.
The 1929 amendments were repealed, with the original statutes which they amended, by chapter 243, Public Laws of 1935. Subsequent amendments to the Adoption Law contain no retroactive features and are, therefore, not pertinent to this inquiry.
The institution of adoption is a very worthy response of the law to social needs, although legislation in that direction seems not to have been enacted in this State until after the Civil War. Instances of its beneficent effect may be found in the history of men and women who have been aided to become prominent in all lines of private and public service, and in the consolation it has given to hundreds of childless homes. But, while both the courts and the law are deeply concerned with the humanities, and with social adjustments which they require, the positive terms of the law may not be made to yield to either our sentiment or our desire.
For the reasons assigned, we must hold the adoption proceeding insufficient to confer upon Mary Elizabeth Presnell (now Hilton), any right of inheritance or distribution in the estate under controversy. Truelove v.Parker, supra.
The judgment of the court below is
Reversed. *Page 209