**GODDARD et al. v. FRAZIER et al.**

No. 3281.

Circuit Court of Appeals, Tenth Circuit.

July 19, 1946.

Writ of Certiorari Denied Oct. 28, 1946.

See 67 S.Ct. 124.

Stephen A. George, of Ardmore, Okl. (R. A. Howard, of Ardmore, Okl., on the brief), for appellants.

H. A. Ledbetter and P. M. Jackson, both of Ardmore, Okl. (Guy H. Sigler, of Ardmore, Okl., on the brief), for appellees.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

This appeal involves the constitutionality of Section 3 of Public Law 116, 79th Congress, Chap. 223, 59 Stat. 313, designed to retroactively cure defects in Indian land titles resulting from the decision of the Supreme Court in United States v. Hellard, 322 U.S. 363, 64 S.Ct. 985, 88 L.Ed. 1326. In that case it was held, under facts not materially different from ours, that in view of the large governmental interests in restricted Indian lands, the United States was a necessary party to a proceedings in the state court to partition restricted Indian lands under Section 2 of the Act of June 14, 1918, 40 Stat. 606, 25 U.S.C.A. § 355.[1] Hence, a judgment of the state court in a proceedings to partition restricted Indian lands to which the United States was not a party in accordance with Section 3 of the Act of April 12, 1926, 44 Stat. 239, 240, was declared void and ineffectual to alienate the restricted land of the Indian ward.

Thereafter and before this judgment, based on the authority of the Hellard case, became final, the Congress enacted the curative statute, supra, Section 3 of which pertinently provided in effect that no order, judgment or decree in partition made or rendered subsequent to the effective date of the Act of June, 14, 1918, and prior to July 2, 1945, involving inherited restricted lands of members of the Five Civilized Tribes should be void or invalid because the United States was not a party to the proceedings and judgment, or because the United States, its agents, officers, or any of them, was not served with notice of process in connection with such orders, judgments or proceedings, and all conveyances subject to attack solely by reason of the enumerated infirmities were confirmed, approved and declared valid.

Our facts fall squarely within the intendment of the curative statute. Narcissa Watson, a full-blood Choctaw Indian, resident of Carter County, Oklahoma, died on or about April 1, 1926, seized of her restricted allotment, which descended to her four children, also Choctaw Indians of the full-blood. On April 13, 1934, the widow of one of her children, Allen Carney, for herself and her minor children, filed suit in the District Court of Carter County to partition the inherited and restricted land in accordance with the Act of June 14, 1918, supra (see footnote 1). Service was had upon the other heirs, but the United States was not made a party to the suit or given notice thereof. The United States probate attorney, however, appeared and participated in the litigation without specific directions from the Department of the Interior. The court having found that the land was not subject to partition in kind, it was sold as provided by law for the appraised value of $2,000, and a sheriff's deed was issued and confirmed to J. B. Lewis as purchaser, who thereafter sold and conveyed the same to C. D. Goddard, one of the appellants here.

Thereafter and in January 1943, the parties to the partition proceedings as the restricted heirs of Narcissa Watson, brought this suit against the record owners to quiet their title to 100 acres of the allotment, alleging that as the sole and only heirs of Narcissa Watson, they inherited the fee simple title to the property according to the laws of descent and distribution, and were therefore entitled to the possession of same free and clear of any claim of the defendant record owners. Notice of the pendency of the suit was duly filed upon the Superintendent of the Five Civilized Tribes in accordance with Section 3 of the Act of April 12, 1926, and the United States removed the same to the Federal court in accordance with the Act.

When the defendants relied upon the sheriff's deed issued in pursuance of judgment of the state court in the partition

---

[1] Under this statute, lands of the full-blood members of the Five Civilized Tribes were made subject to the laws of the State of Oklahoma providing for the partition of real estate, and provided that any land allotted to a full-blood Indian in partition proceedings should remain subject to all restrictions upon alienation and taxation obtaining prior to the partition. But in case of a sale under any decree or partition, the conveyance thereunder operated to relieve the land thus conveyed of all restrictions of every kind. See Grisso v. United States, 10 Cir., 138 F.2d 996, 1000; United States v. Hellard, 322 U.S. 363, 64 S.Ct. 985, 88 L.Ed. 1326; Taylor v. Green, 191 Okl. 362, 129 P.2d 1013.

proceedings, the appellees here, joined by the Government, replied that the said deed was void and conveyed no title because the United States was not a party or given notice of the partition proceedings. The trial court gave judgment in accordance with the decision of this court in United States v. Hellard, 138 F.2d 985. During the pendency of an appeal to this court, the United States reversed our decision in the Hellard case, and we accordingly reversed this case with directions to proceed in accordance with the decision of the Supreme Court in the Hellard case without prejudice however to the right of the appellees there (appellants here) to produce evidence in support of their contention that the participation of the United States probate attorney in the partition proceedings operated to effectively bind the United States to the state court judgment.

On remand and in pursuance of our mandate, the trial court, after hearing, concluded that the participation of the United States probate attorney in the partition proceedings did not operate to bind the United States to the judgment. It then proceeded to enter judgment in favor of the Indian heirs and the United States as intervenors in accordance with the pronouncements of the Supreme Court in the Hellard case. Upon consideration of the motion for new trial after the passage of the curative Act, the trial court was of the opinion that the Act did not deprive the Indian heirs of their property without due process of law, and was therefore a valid curative statute. Deeming itself bound however by the mandate of this court to enter judgment in accordance with the decision in the Hellard case, and having concluded that the Government was not a party to the partition proceedings by reason of the appearance and participation of the probate attorney, it rendered judgment quieting the title to the land in question in the Indian heirs. This appeal is from that judgment.

We agree with the trial court that the appearance and participation of the United States probate attorney in the partition proceedings did not bind the United States to the judgment. Under Section 6 of the Act of May 27, 1908, 35 Stat. 312–314, it is a part of the duties of United States probate attorneys to counsel and advise all allottees having restricted lands of their legal rights without charge, and if necessary to bring suit in the name of an allottee to cancel and void any deed, conveyance, mortgage, lease, contract to sell, power of attorney, or any other incumbrance of any kind made in violation of the Act. By Section 8 of the Act of January 27, 1933, 47 Stat. 777–779, it became the duty of the United States probate attorneys to appear and represent any restricted member of the Five Civilized Tribes before the county courts of any county of the State of Oklahoma, or any appellate court thereof in any matter in which the restricted Indian may have an interest. But there is nothing in the statutes or their context indicating a Congressional intention that the probate attorney is authorized to enter the appearance of the United States, or that the United States is bound by any judgment in a proceedings wherein he has thus participated. The probate attorney represents the Indian, not the United States. Indeed, the manifest purpose of the Act of April 12, 1926, supra, was to make it possible to obtain a judgment which would be binding and conclusive as to the United States. Town of Okemah v. United States, 10 Cir., 140 F.2d 963; Caesar v. Burgess, 10 Cir., 103 F.2d 503.

Section 3 of the Act of April 18, 1912, 37 Stat. 86, conferred jurisdiction upon the Oklahoma courts having probate jurisdiction to administer the estates of Osage Indian allottees, and determine heirship in such cases. Section 6 provided for partition by the heirs of restricted lands inherited from allottees in accordance with the laws of the State of Oklahoma. We held in United States v. Drummond, 144 F.2d 375, that the United States was not bound by a judgment in a state court proceedings involving the lands of a restricted Osage Indian to which it was not a party, although the Secretary of the Interior had authorized the employment of counsel for the Indian and approved the fees to be paid for services rendered in connection with the state court litigation. The Supreme Court affirmed 324 U.S. 316,

65 S.Ct. 659, 89 L.Ed. 969, holding that to bind the United States when it was not a formal party, it must have a "laboring oar" in the controversy.

The more perplexing question is whether, as contended by appellee, the curative statute operated to deprive the restricted Indians of their property without due process of law. From the Hellard case, we have seen that the deed issued in pursuance of the state court judgment was void and therefore did not operate to alienate the property of the Indians, although they did everything within their power to effect an alienation. In Grisso v. United States, 138 F.2d 996, we held that restricted Indian owners of land in joint tenancy were indispensable parties to a partition proceedings under the 1918 Act, and a deed issued in pursuance to a partition proceedings in which all joint tenants were not parties was void. We have also held that a deed by a fullblood Indian to lands inherited or devised from the allottee of such land was void unless approved by the proper county court in accordance with the Act of April 12, 1926. Ward v. United States, 10 Cir., 139 F.2d 79; United States v. Goldfeder, 10 Cir., 112 F.2d 615, 617; Murray v. Ned, 10 Cir., 135 F.2d 407. See also State of Minnesota v. United States, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235. In truth, courts have always been quick to vindicate the Congressional policy for the protection of the Indian ward, and to that end to void any conveyance of restricted land not in strict conformity with authorizing legislation.

■ As a general proposition, it is said that a jurisdictional defect in a judgment cannot be cured by retroactive legislation without denial of due process of law, while retroactive legislation designed to cure non-jurisdictional or modal defects is within the constitutional power of the legislature. People v. Van Nuys Lighting District, 173 Cal. 729, 162 P. 97, Ann.Cas.1918D, 255; Miller v. McKenna, 23 Cal.2d 774, 147 P.2d 531; Ward v. Howard, 217 N.C. 201, 7 S.E.2d 625; Ange v. Owens, 224 N.C. 514, 31 S.E.2d 521; Genzer v. Fillip, Tex.Civ. App., 134 S.W.2d 730; Israel v. Arthur, 7 Colo. 5, 1 P. 438; Willis v. Hodson, 79 Md. 327, 29 A. 604; Roche v. Waters, 72 Md. 264, 19 A. 535, 7 L.R.A. 533; Frederick v. Douglas County, Or., 155 P.2d 925; Chase v. Trout, 146 Cal. 350, 80 P. 81; Cooley on Constitutional Limitations, 8th Ed., P. 776; Sutherland Statutory Construction, 3rd Ed., Sec. 2206. The doctrine is based upon the sound principle that curative acts cannot cure want of authority to act at all, or validate or infuse life into utterly void proceedings without taking the property of one person and transferring it to another in violation of due process. Campbell v. Holt, 115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483; Montgomery v. Town of Branford, 107 Conn. 697, 142 A. 574; Ward v. Howard, 217 N.C. 201, 7 S.E.2d 625; Booth v. Hairston, 193 N.C. 278, 136 S.E. 879, 57 A.L.R. 1186, 1192. See also Hodges v. Snyder, 261 U.S. 600, 43 S.Ct. 435, 67 L.Ed. 819. The defect is not incurable unless the remedy violates due process. What constitutes a jurisdictional defect in terms of due process of law must necessarily be resolved by resort to the fundamental principles of due process itself, bearing in mind that the concept is indefinable by legalistic formulae, but is founded upon considerations of fundamental fairness. Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595; Willoughby on Constitution, 2nd Ed., p. 1681.

■ In search of a ready test for determining the validity of a curative statute, the courts have established the rule that "a legislature may validate by subsequent act anything it might have authorized previously or may make immaterial anything it might have omitted in the original act." Sutherland, supra, sec. 2206. Mr. Cooley states the rule thus: "If the thing wanting or which shall fail to be done and which constitutes the defect in a proceedings is something the necessity for which the legislature might have dispensed with by prior statute, then it is not beyond the power of the legislature to dispense with it by subsequent statute". Cooley, supra, p. 775. The United States Supreme Court quoted the foregoing statement by Mr. Cooley in the very early case of Mattingly v. District of Columbia, 97 U.S. 687, 24 L.Ed. 1098, with the further statement that the Con-

942

gress might cure irregularities and confirm proceedings which, without the confirmation, would be void because unauthorized, provided such confirmation does not interfere with intervening rights. See also McFaddin v. Evans-Snider-Buel Co., 185 U.S. 505, 22 S.Ct. 758, 46 L.Ed. 1012.

 Where the object and effect of the curative statute is to "correct an innocent mistake, remedy a mischief, execute the intention of the parties, and promote justice, then both as a matter of right and of public policy" the law is constitutionally valid. Cooley, supra, p. 781. To illustrate this abstract rule, Cooley cited the old case of Kearney v. Taylor, 15 How. 494, 14 L.Ed. 787, where a sale of real estate belonging to infant joint tenants had been made by an order of the court in a partition suit, and bought by a company of persons for the purpose of subdividing the same. The sale was confirmed in their names, but by mutual agreement the deed was made to one of the company for convenience in selling the parcels of land. The deed to the individual was declared void because not in conformity with the judicial sale. The legislature passed a curative statute providing that if the land was sold fairly for sufficient consideration and with the consent of the purchaser, it should have the same effect as though it was made directly to the purchaser. The court sustained this statute as not unconstitutional. Similarly, sales and conveyances under judgments defective because of a failure to properly serve summons have been validated; terms of court held without authority have been legalized; and judgment rendered by courts without jurisdiction have been constitutionally validated. See Sutherland, supra, Sec. 2218. Furthermore, a legislative act which cures the illegality or defect may be passed and become operative after suit is brought to enforce the rights accruing by reason of the illegality or defect. The bringing of the suit vests in a party no right to a particular decision. See United States v. Heinszen & Co., 206 U.S. 370, 387, 27 S.Ct. 742, 51 L.Ed. 1098, 11 Ann.Cas. 688; Chicago, R. I. & P. R. Co. v. Austin, 63 Okl. 169, 163 P. 517, L.R.A.1917D, 666; Cooley, supra, p. 789.

 Courts do not regard rights as constitutionally protected which are contrary to the equity and justice of the case. Cooley, supra, p. 784. And when the intent of the curative act is to achieve a result which will be recognized in a court of equity, a greater presumption of validity attaches to it and should be liberally construed to effectuate the salutary purpose. See Sutherland, supra, Sec. 2214. Our question then is whether by the enactment of the curative statute the Congress arbitrarily took the Indian's property by ratifying and validating the judicial proceeding by which all of the Indians intended to effect an alienation of the property they now claim, but failed only because the United States in its governmental capacity was an indispensable party. In making the lands of the full-blood members of the Five Civilized Tribes subject to the laws of Oklahoma for the partition of real estate, the Congress could have expressly dispensed with the necessity of making the United States a party to any such proceedings under the statute. Jurisdiction to partition the lands in question and to issue the deed here attacked was expressly conferred upon the state court which rendered the judgment. Its jurisdiction failed, not because it was nonexistent, but only because it was improperly invoked. The Indians fully intended to invoke the jurisdiction of the Court over their property, and by its processes to part with their title thereto, and no one doubted the success of their efforts until by rule of decision the indispensability of the United States as a party was established. The only right of the Indian is to have the United States made a party to the proceedings in order to have the benefit of its guardianship. The Indian has no greater interest and can assert no greater right in the land than that of the Government as his guardian.

 By the curative statute, the Congress has waived its right to be a party to the proceedings and has thus confirmed and approved the judicial act by which the lands were alienated. Furthermore, upon the enactment of the curative statute, the United States withdrew from this proceedings and does not now contest its validity. We thus have a Congressional find-

ing that the defective judicial process did not violate the principles of substantial justice, and our independent consideration of the proceedings convinces us that the curative legislation did nothing more thar give legal effect to the manifest intention o the parties. It is founded upon justice and equity, generated by the Congressiona. purpose to right a wrong, and it is therefore not unconstitutional.

In an effort to sustain the judgment of the trial court, notwithstanding the validity of the curative statute, appellees attack the sheriff's deed for irregularities in the state court proceedings, which, they insist, voided the deed. The irregularities complained of do not appear upon this record, nor were they noticed by the trial court in its judgment, from which this appeal was taken. It is said, however, that they were presented to and decided by the trial court in the former trial, and were presented to this court on appeal.

Apparently on the theory that we may take judicial notice of the record and proceedings in the former case, it is pointed out that the sheriff's return shows that he sold the 100 acres of land to J. B. Lewis as the highest bidder for $2,000, when in fact he only sold 75 acres to Lewis for $1,500; that Sina Frazier, now Postoak, elected to take the remaining 25 acres in lieu of her one-fourth interest in the proceeds of the sale; that Lewis did not pay the price for the land bid at the sale, but instead Goddard furnished the money; and that one of the attorneys for the Indians in the action also acted as attorney for Lewis.

It is sufficient to say that on the face of this record, and upon the record in the former appeal, the sheriff's sale and return thereon was conducted in compliance with the order of sale, which was in accordance with the authorizing statutes. Title 12 O.S.A. §§ 1513-14-16. There is nothing on this record or the record in the former proceedings tending to show that the appellees, as restricted Indians, were defrauded or overreached in any manner. There is nothing to show that the land was worth in excess of its appraised value, or that the Indians did not receive their proportionate share of the sale price. Since they received their proportionate share of the proceeds of the sale, it is immaterial whether the purchase price was paid by Lewis or by some one else; or whether Sina Frazier received her share in land or in money. The sale was in compliance with the statute, was legal upon its face, and it is therefore valid. See Hargis v. Hargis, 181 Okl. 377, 73 P.2d 1129.

The case is reversed and remanded to allow the trial court to enter judgment in accordance with its expressed views, and in accordance with the views expressed herein.