IN THE MATTER OF THE ADOPTION OF ELLEN LOUISE HOLDER, NOW CALLED DOROTHY RICHARDSON BULLOCK.

(Filed 18 September, 1940.)

1. Adoption §§ 3, 4—

The mother of an illegitimate child must be made a party to proceedings for the adoption of the child, and her consent to the adoption or proof of abandonment of the child in the statutory or legal sense, must be made to appear as a jurisdictional matter.

2. **Same—Parent's consent to adoption must be shown within record and must relate to particular persons seeking to adopt the child.**

   In this proceeding to have an order of adoption declared void, respondents' evidence tended to show that the mother of the child signed application for the admission of the child into a children's home, which application contained an agreement that the home might procure the adoption of the child by such person or persons as it might choose without further notice to the mother, and that the said home agreed to the adoption of the child by respondents.. *Held:* The evidence does not show consent of the parent to the adoption required by law, since the parent's consent must be shown within the record and must relate to the particular proceeding culminating in adoption, the identity of the adoptive parents being a necessary basis for the consent contemplated and required by the statute as a jurisdictional matter in adoption proceedings.

3. **Adoption § 4—**

   Since the laws of inheritance and distribution of property are directly involved in an adoption proceeding, and since the proceeding is in derogation of the common law, it must be strictly construed.

4. **Adoption § 8—Evidence held insufficient to sustain finding that decree of adoption was actually made or entered.**

   Evidence that the persons seeking to adopt the child in question resided in another state and forwarded by mail an application for adoption, consent to the adoption of the children's home to which the child had been committed, and an unsigned order or decree of adoption, to the clerk and order or decree of adoption were duly recorded but that the order was not signed, although the name of the clerk appeared on the record, and certified copies of the order with the rubber stamp signature of the clerk were mailed to the said children's home, is insufficient to support a finding that any order of adoption was actually either made or entered.

5. **Judgments § 18—**

   Where the evidence is insufficient to support a finding that an unsigned order or decree of adoption was actually made or entered by the clerk, the signing of the order *nunc pro tunc* is error.

6. **Adoption § 4—Evidence held to disclose that child was never within jurisdiction of court in which adoption proceedings were instituted.**

   The evidence disclosed that the child in question was brought by its mother into the juvenile court of the county of their residence charged with being a dependent child, that the court committed it to the custody of a children's home society having its home office in another county of the State, but that the child was immediately taken by the persons seeking to adopt it to their residence in another State. *Held:* The child never resided in the county in which is located the home office of the Children's Home Society, its mere commitment to the children's home not having the effect of making the child's constructive residence there, and adoption proceedings in that county are void since the child was never within its jurisdiction.

APPEAL by petitioner from *Clement, J.,* at 2 October, 1939, Civil Term, of GUILFORD. Reversed.

On 11 August, 1923, Bessie Holder, the unmarried mother of Ellen Louise Holder, the latter being the child referred to in the proceedings in this cause, made application to the Children's Home Society of North Carolina, Inc., for the admission of the said child into the Home, and signed a paper which, besides commitments with respect to the custody of the child, contained the following clause: "Furthermore, I hereby agree that said Society, if it so desires, may obtain for said child a legal adoption by such person or persons as may be chosen by said Society or its authorized agents without further notice to me."

On 13 August, 1923—the day the child is said to have been received into the custody of the Society—she was brought into the juvenile court of Forsyth County by the mother, charged with being a dependent child, and, under an order of that court, was formally committed to the custody of the Children's Home Society of North Carolina, Inc., to remain in such custody for an indeterminate period, and was presently delivered to the custody of Mrs. M. J. Bullock, one of the respondents in this case, who took the child from Winston-Salem directly to Horry County, South Carolina, where Mrs. Bullock resided, and where the child has since remained. Actually the child was not an inmate, at any time, of any home established by the Society, which acted only as an intermediary.

On 11 January, 1926, an application was made by M. J. Bullock and wife for the adoption for life of Ellen Louise and appended thereto, or endorsed thereupon, was a consent to said adoption by the Children's Home Society of North Carolina, Inc., by John J. Phoenix, State Superintendent. This application was forwarded by mail to M. W. Gant, clerk of the Superior Court of Guilford County. The application, with an unsigned order or decree of adoption, was recorded in the Book of Orders and Decrees, the record remaining in this condition until the present proceeding to cancel the order of adoption was instituted.

It appears from this record of the adoption proceeding that no notice was given to the parents of Ellen Louise Holder. Neither was made a party of record, and neither was present at any part of the proceeding before the clerk. There was no consent other than that contained in the clause of the paper writing signed by the mother, Bessie Holder, at the time that Ellen Louise was committed to the custody of the Society.

Meantime, M. J. Bullock died on 1 December, 1936. The petitioner, a brother and heir at law or distributee of the estate under the statutes of descent and distribution, brought this proceeding to have the order of adoption declared void.

It was, and is, contended by the petitioner that inasmuch as (a) no notice was given to the parents of Ellen Louise and they were not parties to the action, and (b) since no parental abandonment of the child

has been found, and (c) since the child had not been at any time of the adoption proceeding within the jurisdiction of the court (actually residing in Winston-Salem and in Horry County, S. C., during that period), the proceedings were void. The petitioner further insists that it does not appear from the record that any order of adoption had ever been rendered or signed.

The respondent contended that, under the proceedings set out, the Superior Court of Guilford County acquired jurisdiction for the purpose of adoption both of the child and of the subject matter; that the consent of the Children's Home Society was all that was required; and that the adoption decree was actually rendered, although not signed. The respondent raised no question as to the propriety of the proceeding adopted by the petitioner.

On the hearing before the assistant clerk of the Superior Court of Guilford County, the latter decided the matters in issue against the petitioner, amongst other things finding as facts:

"(9) That upon said petition and consent an order granting letters of adoption was entered, and letters of adoption were issued on or about January 11, 1926. That on or about January 11, 1926, J. C. Franklin, Deputy Clerk of the Superior Court of Guilford County, issued certified copies of said petition, consent, order granting letters of adoption and letters of adoption, and delivered two sets of the same to John J. Phoenix, one of which sets was retained by him, and the other set delivered to M. J. Bullock and wife, Mrs. M. J. Bullock.

"(10) That the original petition with consent appended, order granting letters of adoption and letters of adoption were all duly recorded in the office of the Clerk of the Superior Court of Guilford County, North Carolina, but the original order granting letters of adoption and the original letters of adoption appearing in the proceedings in the file in the office of the Clerk of the Superior Court of Guilford County were not signed by M. W. Gant, the then Clerk of the Superior Court of Guilford County; his name, however, appears upon the recorded page of the original records in the office of the Clerk of the Superior Court of Guilford County and his rubber stamp signature appears upon both of the certified copies of said proceedings delivered to John J. Phoenix as aforesaid."

Upon his findings of fact, the assistant clerk of the Superior Court concluded, as a matter of law, that upon the original adoption proceeding the court had plenary jurisdiction and that Ellen Louise Holder had been legally adopted, thereupon dismissing the case at the cost of the petitioner, R. M. Bullock.

During the proceeding, according to the findings of the assistant clerk, the respondent moved to have the order of adoption signed *nunc pro tunc,* which the assistant clerk hearing the matter proceeded to do.

The petitioner appealed and the matter was finally heard by Clement, J., presiding at the 2 October, 1939, Civil Term of Guilford County Superior Court. By agreement of counsel, the hearing before Judge Clement was "*de novo*" and upon the record and the evidence taken before the clerk.

From an adverse judgment of Judge Clement, the petitioner appealed to this Court, assigning errors.

*Benj. T. Ward and Varser, McIntyre & Henry for appellant.*
*Smith, Wharton & Hudgins for appellees.*

SEAWELL, J. The facts pertinent to the decision of this case are sufficiently set out above, and repetition will be avoided as far as possible.

The petitioner challenges the validity of the proceeding for the adoption of the child Ellen Louise Holder. He contends that the proceeding is wanting in certain essentials to its validity, namely, notice to the parents of the child, or either of them, consent of such parents, or proof and finding of such parental abandonment as would render such notice and consent unnecessary. He furthermore contends that upon the evidence in this case no order of adoption was ever made or entered. After careful examination of the record, with the aid of able briefs of counsel on both sides, we are of the opinion that these objections of the petitioner are ineluctable. *Truelove v. Parker,* 191 N. C., 430, 132 S. E., 395; *Ward v. Howard,* 217 N. C., 201; *In re Shelton,* 203 N. C., 75, 164 S. E., 332. Facts sustaining the jurisdiction should affirmatively appear. Here, on the contrary, it is clear from the record that neither parent was made a party to the proceeding or gave consent to the adoption in the manner contemplated by the statute. This, in the cited cases, is held to be essential to jurisdiction of the subject matter. Abandonment is not suggested in the adoption proceeding and, of course, no finding was made with regard to it. There is nothing, however, in the record which could be construed to indicate an abandonment in the statutory or legal sense. *In re Shelton, supra; Truelove v. Parker, supra,* p. 438; *S. v. Whitener,* 93 N. C., 590.

The respondent contends that the consent of the mother is to be inferred from the conditions under which she surrendered custody of the child to the Children's Home Society of North Carolina, Inc., and from the clause in the paper writing signed by her, above quoted, and that this was available in the adoption proceeding as, so to speak, relayed from the mother.

We regard it as insufficient for that purpose. The consent noted in the adoption proceeding is the consent of the Children's Home Society of North Carolina, Inc., and not that of the mother.

This sort of attempted innovation on the law of adoption was dealt with in *Ward v. Howard, supra,* at p. 206. We quote: "As to what time—relative to the adoption proceeding—consent of the living parent may be obtained, whether before or after the institution of such proceeding, we need not here consider. The consent must at least be in fair contemplation of the proposed adoption, and this includes its most essential feature—the identity of the adoptive parents. Except in the case of abandonment, it is not without reason that society looks first to the concern and foresight of the natural parents in the selection for the child adoptive parents into whose hands they surrender the duties and burdens of custody, training, and tuition; and when we come to the question of property rights affected, the proceeding concerns a public policy, which does not rest alone upon custodial right."

Under the statute, the consent must appear within and not *dehors* the proceeding, and must have reference to the particular proceeding which will culminate in adoption. Jurisdiction of the court cannot be made to depend upon a blanket release or consent on the part of the parent that the child may be adopted in whatsoever proceeding may be brought and to whomsoever may apply. This Court has been careful to preserve the principle of certainty in adoption proceedings, since the laws of inheritance and distribution of property are directly involved. The social importance of preserving the integrity of this system is as great as that involved in the benevolent reconstruction of family relations.

The proceeding is in derogation of the common law and must be strictly construed. *Grimes v. Grimes,* 207 N. C., 778, 178 S. E., 573.

We do not find in this record evidence to sustain the position of either court before whom the matters were heard that any order of adoption was actually either made or entered, and the signing of the order *nunc pro tunc* was wholly unjustified. Neither does it appear that Ellen Louise Holder was ever within the jurisdiction of the Superior Court of Guilford County. The fact that the home office of the corporation—the Children's Home Society of North Carolina, Inc.—was in Greensboro would not give her constructive residence there. Her actual residence, down to the time she was delivered to Mrs. Bullock, was in Forsyth County, and, thereafter, in Horry County, South Carolina. *Burrowes v. Burrowes,* 210 N. C., 788, 188 S. E., 648.

There is much evidence in the record—omitted in the above statement—which has no bearing on the issues of the case, but which, nevertheless, is calculated to engage the humanities. This prompts some comment, which is not intended to be homiletic, but may afford a helpful suggestion.

Considering the nature and great importance of the adoption of children into the home and family in comparison with most other trans-

actions of life, it seems to us amazing that so little regard is often paid to the vital necessity of legality. The necessary steps are easy to understand and easy to observe, and only a fair degree of attention at the right time will serve to prevent frustration, disappointment and heartbreak. One cause of such recurring disappointments seems to lie in the mistaken notion that some of the essential elements of the proceeding may be initiated in the juvenile court, or, as in this instance, that some institution or agency to which the child has been committed may take over and exercise functions which the statute leaves exclusively to the parent or guardian. A clearer understanding of the limitations of jurisdiction and authority of the various agencies dealing with the custody and welfare of children is imperative.

We have reached the conclusion that the proceeding challenged by the petitioner, culminating in the purported adoption of Ellen Louise Holder, is void for the reasons assigned.

The judgment of the court below is
Reversed.