MOHAMMED KASIM, KAARENIA ANNA KASIM FOR THE ADOPTION OF
MOHAMMED RASUL KASIM

No. 8110SC1026

(Filed 6 July 1982)

1. **Adoption § 2.1— motion to dismiss adoption proceeding—no right of natural mother to intervene—more than six months since consent to adoption**

   In an action in which the adoptive father moved to dismiss the adoption proceeding on the grounds that he and his wife had permanently separated, the trial court properly denied the natural mother's motion to intervene since she attempted to withdraw her consent more than nine months after entry of an interlocutory decree granting tentative approval for the adoption of the child. G.S. 48-11.

2. **Adoption § 2.1— consent of natural mother for couple to adopt—withdrawal of one parent from adoption petition does not require dismissal of the proceedings**

   Where a natural mother gave her consent for a couple to adopt her child and, after an interlocutory decree granting tentative approval for the adoption of the child was filed, one spouse withdrew from the adoption petition, the withdrawal of petitioner from the adoption petition did not, in and of itself, require dismissal of the proceedings under G.S. 48-20(a) and 48-1. Therefore, the trial judge erred in dismissing the proceedings without first determining whether, in the best interest of the child, the adoption proceeding by the remaining spouse should be dismissed or allowed to continue to a final order.

APPEAL by petitioner Kaarenia Anna Kasim from *Godwin, Judge.* Appeal by Mary Kay Yorio from denial of her Motion to Intervene. Order entered 24 April 1981, in Superior Court, WAKE County. Heard in the Court of Appeals 5 May 1982.

*Howard & Morelock, by Fred M. Morelock, for petitioner-appellant.*

*Bode, Bode & Call, by Robert V. Bode and Howard S. Kohn, for appellant Mary Kay Yorio.*

*James R. Fullwood for appellee Wake County Department of Social Services.*

CLARK, Judge.

Kaarenia Anna Kasim and her husband Mohammed Kasim filed a petition for the adoption of Mohammed Rasul Kasim, a minor child. The natural mother Mary Kay Yorio consented to the adoption by the two petitioners, as did the Wake County Department of Social Services, guardian ad litem for the child. After the interlocutory decree but before the final order of adoption, Mohammed Kasim, the adoptive father, moved to dismiss the adoption proceeding on the grounds that he and Kaarenia Kasim had permanently separated. Mary Kay Yorio filed a motion to intervene. From the order dismissing the proceeding, petitioner Kaarenia Anna Kasim appealed, raising the question of whether the trial court properly dismissed the proceeding. Mary Kay Yorio appealed from the order denying her motion to intervene. For the reasons set forth below, we reverse the order dismissing the proceedings and remand to Superior Court. We affirm the determination that Mary Kay Yorio had no right to intervene in the matter at this time.

I

The facts of this case, undisputed except as noted, are as follows: On 29 April 1978, Mary Kay Yorio gave birth to a male child. From the time the child was about seven days old, Kaarenia Anna Kasim had physical custody of him. In April 1979, Mrs. Kasim and her husband Mohammed Kasim petitioned to adopt the child, and Ms. Yorio consented in a writing filed 9 April 1979, to the adoption by Mr. and Mrs. Kasim. Ms. Yorio also signed an affidavit declaring that she was unmarried at the time the child was born and that the child had not, to her knowledge, been legitimated. In a supplemental petition to the adoption, Mr. and Mrs. Kasim asserted that the natural father of the child was unknown, and they sought an order declaring abandonment and the appointment of the Wake County Department of Social Services (D.S.S.) as guardian ad litem. After service of process by publication, an order was entered declaring the child abandoned and appointing D.S.S. guardian ad litem. According to the record D.S.S. consented to the adoption by petitioners by writing received in the Wake County Clerk's office 25 July 1979.

On 24 July 1979, the Assistant Clerk of Superior Court entered an interlocutory decree granting tentative approval for

the adoption of the child. On 10 April 1980, however, Mohammed Kasim (Kasim) filed a motion to dismiss the adoption petition. In his motion, Kasim asserted that he was the natural father of the child; that he had not read or understood the supplemental petition for adoption which indicated that the natural father of the child was unknown; that the child had lived with him from birth until 17 November 1979, when he and Mrs. Kasim separated; and that, since the separation, the child had remained with Mrs. Kasim. In addition to wanting the adoption petition dismissed, Kasim wanted stricken the order declaring the minor child abandoned by his natural father, and he requested a hearing to establish the proper parties to have custody and control of the child.

Prompted by this motion, Ms. Yorio on 7 May 1980, filed a motion to intervene in the action. In her motion, she claimed that her consent to the adoption was conditioned upon adoption of the child by both petitioners and that she was ready, willing, and able to resume custody of the minor child.

Mrs. Kasim responded to both motions by denying that Mohammed Kasim was the natural father of the child, by reasserting the finding that the father had abandoned the child, by denying that Ms. Yorio was able to resume custody of the child, and by asserting that it was in the best interests of the minor child that a final order of adoption be entered by the court. She requested entry of an order allowing her to adopt the child or, in the alternative, the denial of Kasim's motion to dismiss as it related to her and continued placement of the child with her so that she could demonstrate her abilities as a sole adoptive parent. She also sought denial of Kasim's and Ms. Yorio's motions.

By order dated 27 August 1980, the Clerk of Superior Court, Wake County, entered an order denying both Ms. Yorio's motion to intervene and Kasim's motion to set aside the order of abandonment. The Clerk also dismissed the adoption proceeding. Both Mrs. Kasim and Ms. Yorio appealed to Superior Court where Judge Donald Smith affirmed the denial of Ms. Yorio's motion to intervene but concluded that the Clerk had erred in dismissing Mrs. Kasim's petition without a full and fair hearing of all facts bearing on a determination of the best interests of the child. Judge Smith directed the parties to schedule a hearing for this determination.

The hearing was set before Judge Godwin on 21 April 1981. After hearing evidence from Mrs. Kasim, Judge Godwin entered an order finding, among other facts, the following:

14. That Mrs. Kasim is a fit and proper person to have custody of the minor child and is a fit and proper person to adopt the child and absent the legal and procedural defects in the proceeding, as set forth herein, it would be in the best interests of the child for the adoption to be complete and for Mrs. Kasim to be allowed to adopt the child.

15. That the natural mother's consent to adoption was given for one specific adoption proceeding, that is, the adoption of the child by Mohammed Kasim and wife Kaarenia Anna Kasim. That the natural mother has not consented to the adoption of the child by the particular person, Kaarenia Anna Kasim, individually, and that such consent is required by law prior to Kaarenia Anna Kasim being allowed to adopt the child individually as a sole parent.

. . . .

17. That while the Court finds as a fact that Kaarenia Anna Kasim is a fit and proper person to have custody of the child and to adopt the child and that, absent the defect in the current proceedings, that it would be in the best interest of the child for the adoption to be completed in the individual name of Kaarenia Anna Kasim, the Court finds that there is no consent given by the natural mother, with knowledge that Kaarenia Anna Kasim, individually, as a sole parent, would be the adopting party. That because of this defect in the adoption procedure both the child and Mrs. Kasim would be subject to interference from future legal claims of the natural mother and, it is, therefore, in the best interest of the child that the adoption proceeding be dismissed.

Judge Godwin concluded that the General Statutes of this State do not provide any procedure which would, under the circumstances of this case, allow the adoption to continue to a final order. He, therefore, dismissed the petition. Mrs. Kasim appealed from this order while Ms. Yorio appealed from Judge Smith's determination that she had no right to intervene. Mr. Kasim has not appealed from the denial of his motion to set aside the order of abandonment.

## II

[1]  Under G.S. 48-11, no parental consent shall be revocable by the consenting party after the entry of an interlocutory decree or of a final order when entry of an interlocutory order has been waived according to the provisions of G.S. 48-21. G.S. 48-11 adds the proviso that no consent shall be revocable after six months from the date of the giving of the consent. The purpose of this statute seems obvious: to give stability to the adoptive process. It allows prospective adoptive parents as well as the child to settle into a stable home environment, to be disturbed only upon those occasions when, prior to the final order, county directors of social services or adoptive agencies conduct studies of the provisions being made for the child. It also gives the natural parents a period of intense review of their decision to allow the adoption. Once the statutory period terminates, the right of the natural parents to revoke consent terminates* absent a showing of fraud in obtaining the consent.

In the instant case, the consent to adoption signed by Mary Yorio, the natural mother, was filed on 9 April 1979. The final paragraph of that consent stated, "I understand the Consent to Adoption can be revoked within the next six months provided the Interlocutory Decree or Final Order of Adoption has not been issued." Nevertheless, on 6 May 1980, Ms. Yorio attempted to withdraw her consent by filing a motion to intervene in which she sought custody of the minor child. Not only was the attempted withdrawal beyond the six-month period, but it also occurred more than nine months after entry of the interlocutory decree. There was no allegation that Ms. Yorio's consent was obtained by fraud. At the time of the action, indeed at the time the decree was entered, Ms. Yorio's right to withdraw her consent had terminated. The withdrawal of her consent to the adoption, for a reason other than fraud, was ineffective. Ms. Yorio's motion to intervene was properly denied.

## III

[2]  Having determined that Ms. Yorio's consent was irrevocable by her, we still must consider the question of whether, as Judge

---

* Under G.S. 48-23(2) natural parents are divested of all rights with respect to the child upon entry of the final order of adoption.

Godwin found, the consent Ms. Yorio gave to Mr. and Mrs. Kasim to adopt was not "sufficient legal consent" for Mrs. Kasim, individually, as a sole parent, to adopt the child. In entering the order dismissing the adoption proceeding, Judge Godwin concluded that the consent was not sufficient, that an improper consent rendered the adoption proceeding procedurally defective, and that, since the proceeding was procedurally defective, the best interests of the child necessitated dismissal of the proceeding.

G.S. 48-4(a) requires that, if a petitioner for adoption has a husband or wife living and competent to join in the petition, then such spouse must join in the petition.* This provision reflects the policy that a child should not be brought into a house where it is unwanted by the husband or the wife. *A Survey of Statutory Changes*, 25 N.C.L. Rev. 376, 408-412 (1947). Chapter 48 is silent on the question of what effect the withdrawal of one spouse from the petition has on the proceedings when the interlocutory decree has already been entered. Under G.S. 48-18(b), provision is made for the possibility that after the interlocutory decree has been entered, but before the final order, one of the two spouses dies. In this case, the petition of the surviving petitioner shall not be invalidated by the death of the other petitioner. The court may proceed to grant the adoption to the surviving petitioner. This statute is consistent with the fact that, under Chapter 48, single persons as well as married couples may adopt. G.S. 48-18(b) overlooks the possibility that the written consent of the natural parent might not allow for adoption by a surviving spouse.

No North Carolina case has addressed the question before us. The cases cited by appellant Yorio, *In Re Holder*, 218 N.C. 136, 10 S.E. 2d 620 (1940), and *Ward v. Howard*, 217 N.C. 201, 7 S.E. 2d 625 (1940), are inapposite in determining the question before us. First, those cases were decided before the current Chapter 48 was enacted, and the previous Chapter 48 contained no statement of legislative intent which establishes guidelines for construction of the chapter. Secondly, neither case presents the question of the validity of a consent upon withdrawal of one of the petitioners to whom consent was given.

---

* It should be noted that, at the time of Judge Godwin's order, Mr. and Mrs. Kasim were legally divorced.

In the absence of a specific statutory provision or case law related to the effects of a voluntary withdrawal from the petition, we must look for guidance to other provisions of Chapter 48. Under G.S. 48-20(a), the dismissal of an adoption proceeding is discretionary:

> If at any time between the filing of a petition and the issuance of the final order completing the adoption it is made known to the court that circumstances are such that the child should not be given in adoption to the petitioners, the court *may* dismiss the proceeding. [Emphasis added.]

This grant of discretion to the court in its determination of whether the proceeding should be dismissed allows the court to consider myriad factors which might bear on the question of dismissal. The factors considered should relate to the stated legislative policy which is the framework of adoption in this State:

> (1) The primary purpose of . . . Chapter [48] is to protect children from unnecessary separation from parents who might give them good homes and loving care, to protect them from adoption by persons unfit to have the responsibility of their care and rearing, and to protect them from interference, long after they have become properly adjusted in their adoptive homes by natural parents who may have some legal claim because of a defect in the adoption procedure.
>
> . . . .
>
> (3) When the interest of a child and those of an adult are in conflict, such conflict should be resolved in favor of the child; and to that end this Chapter should be liberally construed.

G.S. 48-1.

After reviewing the legislative intent behind Chapter 48, we conclude that the withdrawal of one petitioner from the adoption petition does not, in and of itself, require dismissal of the proceedings. The withdrawal, however, is a factor to be considered in determining the best interests of the child. The question of the child's best interests should be paramount in the court's consideration of a motion to dismiss the proceeding.

The conclusions Judge Godwin entered in dismissing the proceedings were made as a matter of law. Under our reading of adoption law, the conclusions that the consent was improper, that it rendered the proceeding procedurally defective, and that the best interests of the child necessitated dismissal because of the possibility of continuing interference by the natural mother "who may have some legal claim because of the defect in the adoption procedure," overlooked clear legislative policy which places the interests of the child above procedural defects. Additionally, the order appealed from overlooked the fact that, under G.S. 48-28, Ms. Yorio, a party to the adoption proceedings (G.S. 48-7), may not, after the final order, question the validity of the adoption proceeding by reason of any defect therein. Judge Godwin's conclusions were clearly errors of law and cannot stand.

We reverse the order of Judge Godwin, and we remand this case to Wake County Superior Court for a determination of whether, in the best interests of the child, the adoption proceeding by Mrs. Kasim should be dismissed or allowed to continue to a final order.

Reversed and remanded.

Chief Judge MORRIS and Judge MARTIN (Harry C.) concur.