IN RE: BABY BOY SHAMP, A MINOR CHILD

No. 8626SC115

(Filed 2 September 1986)

**1. Adoption § 2; Rules of Civil Procedure § 24— intervention by natural parents —service of motion—sufficient for jurisdiction**

In an adoption proceeding in which the natural parents intervened, the trial court acquired personal jurisdiction without the issuance and service of summons where the natural parents served their motion to intervene upon the attorneys for the guardian ad litem and the Department of Social Services; a party who intervenes pursuant to N.C.G.S. § 1A-1, Rule 24 is not required to issue a summons and complaint pursuant to N.C.G.S. 1A-1, Rule 4. Although the motion to intervene was not served upon the parties petitioning to adopt the child, those petitioners did not appeal.

**2. Appeal and Error § 6.8— denial of motions for Rule 12(b)(6) dismissal and for summary judgment—interlocutory**

In a contested adoption proceeding, the denial of motions for dismissal under N.C.G.S. § 1A-1, Rule 12(b)(6) and for summary judgment presented no question for appellate review.

**3. Fraud § 12; Adoption § 2.1— consent obtained by fraud—evidence sufficient**

In a contested adoption proceeding, the trial court did not err by denying the motions of the guardian ad litem and DSS for directed verdict and judgment n.o.v. on the issue of fraud where the child's mother and paternal grandmother testified that a social worker had made representations regarding the grandparents' chances of adopting the child, even though the father had testified that he did not remember the social worker making representations to him; there was evidence that the statements were not merely expressions of opinion in that the social worker said the grandparents had a fifty/fifty chance of adopting the child but shouldn't have any trouble since Social Services always tried to keep the child in the family, even though she knew of the Department's adoption procedures and knew that her opinion that the grandparents were not suitable would be considered by the Department; there was evidence that the social worker made the statements to induce the parents to execute consent forms; and there was sufficient evidence for the jury to find that a prudent person could have reasonably relied on the social worker's statements in signing the consent forms without reading them in that the social worker did not tell the parents that anyone other than the grandparents could be considered for the adoption and told the parents that the forms were

In re Baby Boy Shamp

a mere formality that had to be signed in order for the grandparents to file for adoption. N.C.G.S. 48-9.

**4. Adoption § 2.1— contested adoption—instructions—no error**

The trial court did not err in its jury instructions in a contested adoption proceeding where the instructions requested by the guardian ad litem were given in substance.

APPEAL by Mecklenburg County Department of Social Services and Guardian Ad Litem for the minor child from *Downs, Judge.* Judgment entered 6 September 1985 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 18 August 1986.

This is a proceeding for the adoption of Baby Boy Shamp, a minor child, instituted before the Clerk of Superior Court of Mecklenburg County. On 11 February 1985, the parents of the child, Clifford Shamp and Tammy Shamp, filed motions to intervene in the adoption proceedings and to set aside consent to the adoption, alleging that their signatures on documents entitled "Parent's Release, Surrender and General Consent to Adoption" had been procured by fraud and that Clifford Shamp had been under the influence of drugs when he signed the consent. On 27 February 1985, the Mecklenburg County Department of Social Services filed a motion to dismiss the parents' motions pursuant to G.S. 1A-1, Rules 12(b)(1), (2), (3) and (6), wherein it denied the allegations contained in the motions. On 26 February 1985, the guardian ad litem for the minor child filed a motion joining in the motion of the Department of Social Services. On 14 March 1985, the grandparents of the minor child filed a motion to intervene in the adoption proceeding. On 19 March 1985, the clerk of superior court entered an order allowing the motions to intervene, denying the motions to dismiss, and transferring the case to superior court for trial.

Uncontroverted evidence introduced at trial tends to show the following: Baby Boy Shamp was born on 16 August 1983 to Tammy and Clifford Shamp. On 22 February 1984, Tammy Shamp contacted the Mecklenburg County Department of Social Services (hereinafter the Department) because of family problems which were interferring with their ability to care for their child. On 29 February 1984, a juvenile petition was filed alleging that the child was neglected and dependent as defined by G.S. 7A-517 and an

order was issued, temporarily placing the child in the custody of the Department. Following a hearing on 2 March 1984, Judge Matus entered an order in which he found that the parents consented to the juvenile remaining in the custody of the Department, ordered that the Department retain custody and scheduled an adjudicatory hearing for 27 March 1984. Following the hearing on 27 March 1984, Judge Matus entered an order concluding that the child was a dependent child and ordering that the child be placed temporarily in the custody of the paternal grandparents and that the parties formulate a plan concerning the permanent placement of the child. The parents and Laverne King, a social worker for the Department, signed an agreement on 21 May 1984 giving the parents nine months to accomplish six goals in order to regain custody of their son.

On 15 June 1984, the parents met with Laverne King at the Department and executed consents for adoption, which contained the following provision: "I hereby give general consent to the adoption of said child by any person or persons that may be designated by said director of (social services) without further consent on my part and without notice to me." The document further provided that the consent could be revoked within thirty days. Neither parent revoked their consent within this time period.

The circumstances surrounding the execution of the consent forms are in dispute. The intervenor parents introduced evidence tending to show the following: About a month before the execution of the consent forms, the parents realized that they were not going to be able to meet the requirements of their agreement with the Department to regain custody of their child. They decided to allow the grandparents to adopt the child if they would not be able to get him back. The parents met with Laverne King on 13 June 1984, at the home of the child's grandparents to discuss the adoption. Ms. King told the parents that the grandparents had a "fifty/fifty chance of being able to adopt Bobby, but, off the record, since they were family, there shouldn't be any problem, because Social Services always tries to keep the baby in the family." Ms. King did not tell the Shamps that there was a possibility that the child could be placed with a family that they did not know. Ms. King did not discuss alternatives to adoption with the Shamps. Ms. King asked each of the parents if they wanted the grandparents to adopt the child, and they responded

affirmatively. Ms. King told the parents that they would have to sign consents for adoption before the grandparents could file for adoption and arranged for them to meet with her at the Department on 15 June 1984. When the parents met with Ms. King on 15 June, she handed them consents for adoption, briefly went over them, and explained that "it was a formality that had to be signed in order for Barbara and Clifford Shamp [the grandparents] to file for adoption." (Transcript p. 70.) They each signed the forms without reading them. After they signed the forms, Ms. King asked them if they would like for the grandparents to adopt the child and they each responded affirmatively. Clifford Shamp testified that he had probably been smoking marijuana the day he signed the consent. Ms. King never told the parents at the meetings on 13 June and 15 June that in her opinion the grandparents should not be allowed to adopt the child or that she would make a recommendation regarding the adoption of the child. Ms. King did not meet with the grandparents after the 13 June meeting. The Shamps first learned in January that the grandparents would not be allowed to adopt the child.

The Department presented evidence tending to show that it never made any representations to the Shamps relating to the chances the grandparents had of adopting the child. On 7 June 1984, Ms. King learned that the child's father was in jail and arranged to meet with the family on 13 June 1984 to discuss the family situation. She testified that the father spoke first at the meeting and said that he thought it would be best to surrender the child for adoption and his wife agreed. She told them to think about their decision and arranged to meet with them on 15 June. At the meeting on 15 June, she read each paragraph of the consent and explained it to the Shamps. She asked each of them their wishes with regard to the placement of the child and they said they would like for the paternal grandparents to adopt. Ms. King testified that she told the Shamps that the Department had the ultimate decision as to where to place the child and it was possible that the grandparents would not be chosen as adoptive parents. She further testified that she had reservations "all along" about the grandparents' suitability as adopting parents and had an opinion on the day that the consents were signed that they should not be allowed to adopt. She did not disclose her opinion to the parents. She testified that she did not form the decision

to recommend against adoption by the grandparents until 20 July 1984, when she dictated the transfer summary to the next social worker to work on the case. She further testified that she knew from the time she was first assigned to the case that she would be on the adoption committee in the event the Shamp child was surrendered for adoption, because the social worker who worked with the family is always on the adoption committee. She did not disclose this information to the Shamps because it was against Department policy to disclose the names of the members of the adoption committee.

At the close of the parents' evidence the trial court allowed the motion of the Department and the guardian ad litem for directed verdict against the father with respect to his claim that he was incompetent to execute the consent form. The trial court denied the motions of the Department and the guardian ad litem made at the close of the parents' evidence and at the close of all the evidence for directed verdict on the "fraud" issue. The following issues were submitted to the jury and were answered as indicated:

> (1) Was [Clifford] Robert Shamp fraudulently induced by the Mecklenburg County Department of Social Services to execute a "Parent's Release, Surrender and General Consent to Adoption"?

> ANSWER: Yes.

> (2) Was Tammy Shamp fraudulently induced by the Mecklenburg County Department of Social Services to execute a "Parent's Release, Surrender and General Consent to Adoption"?

> ANSWER: Yes.

On 6 September 1985, the trial court entered judgment on the verdict, ordering that the consent forms executed by the Shamps are rescinded and are null and void. The Department and the guardian ad litem made motions for judgment notwithstanding the verdict or in the alternative for a new trial, which were denied on 23 September 1985. The respondents, the Department and guardian ad litem, gave notice of appeal from the judgment entered on 6 September 1985 and the order entered on 23 September 1985.

*William F. Burns, Jr., for intervenors, appellees.*

*Ruff, Bond, Cobb, Wade & McNair, by Moses Luski and William H. McNair, for respondent, appellant Mecklenburg County Department of Social Services.*

*Gillespie & Lesesne, by Donald S. Gillespie, Jr., for respondent, appellate guardian ad litem for the minor child.*

HEDRICK, Chief Judge.

[1] By Assignments of Error Nos. 3 and 4, the respondents, appellants, the Department and the guardian ad litem, contend that the trial court erred "by failing to dismiss the case which was patently devoid of proper service of process so that personal jurisdiction was lacking." Respondents argue the trial court lacked personal jurisdiction because the parents did not have summons issued and served upon the parties in accordance with G.S. 1A-1, Rule 4. Respondents' contentions are without merit.

This adoption proceeding was instituted when prospective adopting parents filed a petition for adoption in the office of the clerk of superior court pursuant to G.S. 48-15. The natural parents of the child intervened in these proceedings by making a motion to intervene pursuant to G.S. 1A-1, Rule 24. This motion was served upon the attorneys for the guardian ad litem and the Department by depositing a copy of the motion in the United States mail, in accordance with the provisions of G.S. 1A-1, Rule 5. A party who intervenes pursuant to Rule 24 is not required to issue a summons and complaint pursuant to G.S. 1A-1, Rule 4. *Kahan v. Longiotti*, 45 N.C. App. 367, 263 S.E. 2d 345, *disc. rev. denied*, 300 N.C. 374, 267 S.E. 2d 675 (1980). Service pursuant to G.S. 1A-1, Rule 5 of the motion accompanied with the pleading is sufficient service upon the party against whom relief is sought or denied in the intervenor's pleading and is sufficient process to acquire jurisdiction over the party if all other requisites for jurisdiction are met. *Id.* Therefore, in the present case, the intervenor's service of the motion to intervene on the appellants was proper. Respondents argue that the motion was not served in accordance with G.S. 1A-1, Rule 5 upon the parties petitioning to adopt the child. Since these petitioners did not appeal to this Court, this issue is not properly presented by this appeal.

[2]    Respondents next assign error to the trial court's denial of their 12(b)(6) motions to dismiss for failure to state a claim upon which relief can be granted and their motions for summary judgment. These assignments of error present no question for review. *Harris v. Walden*, 314 N.C. 284, 333 S.E. 2d 254 (1985); *Concrete Service Corp. v. Investors Group, Inc.*, 79 N.C. App. 678, 340 S.E. 2d 755 (1986).

[3]    Respondents contend that the trial court erred in denying their motions for directed verdict and judgment notwithstanding the verdict on the issue of fraud. Respondents also assign error to the trial court's instructions on fraud. Respondents argue that the evidence was insufficient to establish the elements of fraud and therefore, that the consent forms executed by the Shamps were irrevocable.

Pursuant to G.S. 48-9, the parents of a child may, in writing, surrender the child to a director of a county department of social services and consent to the general adoption of the child. G.S. 48-11 provides, in pertinent part, that such consent shall not be revocable after thirty days from the date of the giving of consent. After the statutory period terminates, the right of the natural parent to revoke terminates, absent a showing of fraud in obtaining the consent. *In re Kasim*, 58 N.C. App. 36, 293 S.E. 2d 247, *disc. rev. denied*, 306 N.C. 742, 295 S.E. 2d 478 (1982). The elements of fraud are as follows:

> (1) That defendant made a representation relating to some material past or existing fact; (2) that the representation was false; (3) that when he made it, defendant knew that the representation was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that defendant made the representation with intention that it should be acted upon by plaintiff; (5) that plaintiff reasonably relied upon the representation and acted upon it; and (6) that plaintiff thereby suffered injury.

*Keith v. Wilder*, 241 N.C. 672, 675, 86 S.E. 2d 444, 446 (1955) (citations omitted).

Respondent Department contends that Clifford Shamp testified that "he could not remember Laverne King making any representations to him on June 13, 1984, which effectively vitiates

his fraud cause of action." Respondent argues that because Clifford Shamp testified that he could not remember Ms. King's statements at the time of the trial, there is no evidence that any misrepresentation was made to him. This contention is without merit. Tammy Shamp, Clifford Shamp's wife, and his mother testified that Clifford Shamp was present in his parents' home on 13 June 1984 when Ms. King made statements relating to his parents' chances of being able to adopt his child and that he participated in the discussion regarding the adoption. This evidence is clearly sufficient for the jury to find that Ms. King made representations to Clifford Shamp regarding the adoption of his child by his parents.

Respondent Department contends that the record contains no evidence of a misrepresentation of a past or existing fact, but that the statements of Ms. King were merely statements of opinion relating to future prospects. Respondent Department and respondent guardian ad litem further contend that there is no evidence that the statements were false or that Ms. King made them with the intent to deceive the parents of the child. We disagree with respondents' contentions.

To constitute fraud, the misrepresentation must relate to a subsisting or ascertainable fact, as distinguished from a matter of opinion or a representation relating to future prospects. *Ragsdale v. Kennedy*, 286 N.C. 130, 209 S.E. 2d 494 (1974). Generally, the statement must be definite and specific, but the specificity required depends upon the tendency to deceive under the circumstances. *Id.* In *Ragsdale*, our Supreme Court held that statements by the plaintiff that a corporation was a "gold mine" and a "going concern," where plaintiff, as president of the corporation, had peculiar knowledge of the facts and knew that the business had lost money in recent months, presented a jury question as to whether the representations were mere expressions of opinion or statements of material fact. The Court further held that the plaintiff had the duty to make a full disclosure of the financial conditions of the corporation, because once he assumed to speak, he had the duty to make a full disclosure of all matters discussed. *Id.,; see also, Shaver v. Monroe Construction Co.*, 63 N.C. App. 605, 306 S.E. 2d 519 (1983), *disc. rev. denied*, 310 N.C. 154, 311 S.E. 2d 294 (1984).

Mere unfulfilled promises, generally, cannot be the basis for an action in fraud. *Williams v. Williams*, 220 N.C. 806, 18 S.E. 2d 364 (1942). If, however, the promise is made to induce the promisee to act and with no intention of carrying it out, this being a misrepresentation of the promisor's state of mind which is a material fact, it will support an action for fraud. *Id.*

In the present case, the parents introduced evidence tending to show that Ms. King told them that the grandparents had a "fifty/fifty chance of being able to adopt Bobby, but, off the record, since they were family, there shouldn't be any problem, because Social Services always tries to keep the baby in the family." This statement, together with evidence tending to show that Ms. King had knowledge of the Department's adoption procedures and of her impact on the adoption of the Shamp child, presented a jury question as to whether this statement about the grandparents' chances of adopting the child was an expression of an opinion or a statement of material fact. The evidence in the record tending to show that Ms. King had an opinion at the time of the representation that the grandparents were not suitable to adopt the child and knew that this opinion would be considered by the Department in making a decision, is sufficient for the jury to find that the representation was false. Once Ms. King assumed to speak to the Shamps regarding the grandparents' chances of adopting the child, she had the duty to make a full disclosure of facts relating to this matter. *See, Ragsdale v. Kennedy*, 286 N.C. 130, 209 S.E. 2d 494 (1974). This evidence is also sufficient for the jury to find that Ms. King made the statement to induce the Shamps to execute the consent forms, with the intention of relating to the Department adoption committee her opinion that the grandparents should not be allowed to adopt, thus misrepresenting her state of mind. Furthermore, this evidence also tends to show that Ms. King's representation that the Department "always tries to keep the baby in the family," which was clearly a representation of an existing and material fact, was false. We hold, therefore, that the evidence is sufficient to support findings that Ms. King made a misrepresentation of an existing fact, with knowledge that it was false and with the intent to deceive the Shamps. We have examined the instructions to the jury by the trial court on these issues and hold that they were proper.

Respondent Department further contends that the evidence was insufficient for the jury to find that the parents could have reasonably relied upon the statements of Ms. King, because they both signed written consent agreements which gave the director of social services absolute discretion over the placement of the child, without reading them. Respondent argues that as a matter of law, the parents had no right to rely on the representation of Ms. King. This condition is without merit. One who signs a written instrument is "under a duty to ascertain its contents, and in the absence of a showing that he was willfully misled or misinformed by the defendant as to these contents, or that they were kept from him in fraudulent opposition to his request, he is held to have signed with full knowledge and assent as to what is therein contained." *Williams v. Williams,* 220 N.C. 806, 809-10, 18 S.E. 2d 364, 366 (1942) (citations omitted). Whether a prudent person, under similar circumstances, would have signed an instrument without reading it, is a question of fact for the jury. *Cowart v. Honeycutt,* 257 N.C. 136, 125 S.E. 2d 382 (1962).

In the present case, there is evidence tending to show the following: Tammy Shamp first contacted the Department to get financial assistance and counseling because she and her husband were using drugs and needed help taking care of their baby. Ms. King arranged to meet with the parents and grandparents of the child in the grandparents' home to discuss the family situation. Ms. King had superior knowledge to that of the parents, who were seventeen years old at that time, of the adoption procedures of the Department and knew that she would have input into the decision about placing the child for adoption. At the meeting, Ms. King asked each parent whether they wanted the grandparents to be allowed to adopt the child and they responded affirmatively. While purporting to explain the adoption procedures of the Department to the Shamps, she told them that the grandparents, who had temporary custody of the child, should have no problem in adopting the child because "Social Services always tries to keep the baby in the family." Ms. King did not tell them that anyone other than the parents could be considered for the adoption. There is also evidence tending to show that when the parents arrived at the Department to execute the consents on 15 June 1984, Ms. King briefly went over the forms with them and told them that the forms were "a formality that had to be signed

in order for Barbara and Clifford Shamp [the grandparents] to file for adoption." Under these circumstances, clearly there is sufficient evidence for the jury to find that a prudent person could have reasonably relied on Ms. King's statements concerning the adoption process and the contents of the forms and signed the forms without reading them.

[4] The final contention of the respondent guardian ad litem is that the trial court erred in failing to give specific requested instructions relating to adoption laws in North Carolina and the duty of a person signing a legal document to read it. This contention is without merit. The requested instructions were given in substance, although not in the precise language requested by the guardian ad litem. Therefore, the trial court did not err in failing to give the requested instruction. *King v. Higgins*, 272 N.C. 267, 158 S.E. 2d 67 (1967).

For the foregoing reasons, we hold that the trial court properly denied respondents' motions for directed verdict and judgment notwithstanding the verdict and properly instructed the jury. The judgment appealed from is

Affirmed.

Judges WEBB and WELLS concur.