KIMBERLY FAKHOURY, Petitioner-Appellee v. KAREM FAKHOURY, Respondent-Appellant, FOR THE ADOPTION OF K.K.F.

No. COA04-714

(Filed 21 June 2005)

**Adoption— stepparent—consent—fraud—constructive fraud— public policy**

The trial court did not err by concluding as a matter of law that respondent maternal grandfather/adoptive father's consent to petitioner stepparent's adoption of the minor child was not procured by fraud, because: (1) respondent cannot rely on the possibility that petitioner had accessed Internet divorce sites in establishing that petitioner made a false representation; (2) respondent was fully aware of the precarious status of the marriage; (3) assuming arguendo without deciding that a showing of

constructive fraud is sufficient to void a consent to adoption, respondent has failed to show that constructive fraud occurred; and (4) public policy of North Carolina as expressed in Chapter 48 mandates that respondent's motion to dismiss petitioner's petition be denied since it encourages the finality of adoptions and the prompt, conclusive disposition of adoption proceedings, it requires that the interests of the child take precedence over the interests of anyone else including those who are parties to the marriage, and the minor child has been raised by petitioner since January 2000 and considers petitioner his mother.

Appeal by respondent from order dated 22 October 2003, *nunc pro tunc* 14 August 2003, by Judge Paul G. Gessner in District Court, Wake County. Heard in the Court of Appeals 2 March 2005.

*The Sandlin Law Firm, PA, by Deborah Sandlin, V.A. Davidian, III, and Debra A. Griffiths, for petitioner-appellee.*

*Manning, Fulton & Skinner, P.A., by Michael S. Harrell, for respondent-appellant.*

McGEE, Judge.

Karem Fakhoury (respondent) is the maternal grandfather and adoptive father of K.K.F. K.K.F. was born 2 June 1998 to respondent's daughter, Raisha. In mid-December 1999, Raisha asked respondent to raise K.K.F. Respondent agreed on the condition that respondent be permitted to adopt K.K.F. Raisha and K.K.F.'s biological father consented to the adoption, and respondent petitioned for the adoption of K.K.F. on 7 January 2000.

At the time respondent petitioned for the adoption of K.K.F., respondent and Kimberly Fakhoury (petitioner) were living together and discussing marriage. However, they did not yet have specific wedding plans. Respondent and petitioner agreed that petitioner would adopt K.K.F. pursuant to a stepparent adoption. Respondent and petitioner agreed to wait for two years after they were married for petitioner to adopt K.K.F. so that a home study would not need to be completed. *See* N.C. Gen. Stat. § 48-2-501(d) (1999). Respondent and petitioner were married on 27 April 2000.

Respondent signed a consent to the adoption on 19 September 2002, and petitioner filed a petition to adopt K.K.F. on 20 September 2002. Respondent's statutory ability to revoke the consent expired on 26 September 2002. *See* N.C. Gen. Stat. § 48-3-608(a) (2001).

Respondent and petitioner separated on 20 November 2002 when petitioner left the marital home. Respondent testified that it was a "total surprise" and that petitioner had not previously indicated that she was contemplating leaving respondent. However, respondent testified about several incidents of marital discord that occurred prior to 20 November 2002. Respondent testified that petitioner had previously separated from him for three or four nights. Respondent also testified that he and petitioner had discussed going to marriage counseling. Respondent testified that in June 2002, he and petitioner disagreed about their vacation plans in Myrtle Beach, and that while they were in Myrtle Beach, they had a disagreement about respondent's drug use.

Respondent filed a motion to dismiss petitioner's petition to adopt K.K.F. on 25 February 2003, alleging that respondent's consent to the adoption was procured by fraud and was therefore void. The trial court impaneled an advisory jury and the matter was heard before the trial court and the advisory jury on 13 and 14 August 2003. *See* N.C. Gen. Stat. § 1A-1, Rule 39(c) (2003). Respondent requested that the trial court instruct the jury on both actual fraud and constructive fraud. Petitioner objected to an instruction based on constructive fraud. The trial court instructed the jury on actual fraud only.

The advisory jury rendered its verdict on 14 August 2003 and found that petitioner did not fraudulently induce respondent to execute the consent to petitioner's adoption of K.K.F. The trial court took the case under advisement and in an order dated 22 October 2003, *nunc pro tunc* 14 August 2003, made the following findings of fact:

18. The parties had separated in May, 2001 for about five days. Petitioner stayed with her sister, Rhonda Green[,] during that separation. Despite the fact that the parties separated, [r]espondent indicated that it was still his intention at that time that [p]etitioner adopt [K.K.F.].

. . . .

22. On June 15, 2002, the parties had a disagreement that led to [p]etitioner leaving the residence with the parties' daughter and spending the night at her mother's home. . . . Petitioner was very upset about [r]espondent's use of marijuana in the home. Petitioner had refused to go on vacation to Myrtle Beach because of [respondent's] marijuana use and the

events that had transpired in June 2001. [Petitioner] and [r]espondent had gone to Myrtle Beach in June 2001 and [r]espondent smoked a significant amount of marijuana in the presence of [p]etitioner and [K.K.F.] on that trip. Petitioner was pregnant at that time and became very upset and angry at [r]espondent's refusal to stop smoking the marijuana. She left the condominium and took a walk with [K.K.F.] to get away from the marijuana. [Petitioner] became so upset that she called her mother.

23. By the spring and summer of 2002, [r]espondent's drug use had become a very significant issue to [p]etitioner. The parties again planned to go to the beach. Petitioner refused to go to the beach because of the marijuana use. After [p]etitioner refused to go to the beach in 2002, [r]espondent told her that if she would go to the beach then they could talk about their problems. Petitioner agreed to go to the beach and [r]espondent smoked marijuana on that vacation. This left [p]etitioner very stressed and it is not surprising that she sought medication for anxiety. Likewise, it is not surprising that [p]etitioner sought a counselor as it is evident that the parties were arguing much of the time about money and drugs.

. . . .

28. Given the arguments and status of the marriage at the time [r]espondent gave his consent for the adoption, he knew or should have known that there was some possibility that the parties would separate. Further, given the fact that [r]espondent had been represented by Bobby Mills, one of the two members of the American Academy of Adoption Attorneys in North Carolina, in the initial adoption, he should have had a greater awareness of the consequences of giving his consent for the adoption. Evidence showed that [p]etitioner had indicated many times to [r]espondent that she had . . . serious concerns and problems with his drug usage.

. . . .

32. Respondent hired Capital City Consulting to run an analysis of the hard drive on the family computer. . . .

33. . . . . Mr. Marcus [Capital City Consulting employee] found that there had been two web sites accessed with the words

divorce in them. One web site was www.divorcecare.com and the other was www.fbcla.org.

. . . .

36. No evidence was presented from either the expert nor any other source regarding the content of the web sites entitled www.divorcecare.com and www.fbcla.org. The actual websites were not produced and [were] not entered. The [trial] court can draw no conclusions regarding the contents of the sites or what may have been accessed. The web sites may very well have contained information on self care, comfort, solace, reflections, etc. To draw any inference regarding the content of the sites would be purely speculative.

The trial court then made the following conclusions of law:

3. Respondent has failed to prove by clear and convincing evidence that [p]etitioner procured [r]espondent's consent for the adoption through fraud.

4. Respondent's consent to the adoption of his adopted son, [K.K.F.][,] was voluntary and procured without fraud and duress.

5. Petitioner did not fraudulently conceal any material fact from [r]espondent in procuring his consent for the adoption.

6. No good cause exists to delay the entry of the adoption order.

The trial court thereafter denied respondent's motion to dismiss petitioner's adoption petition. Respondent appeals.

We first note that respondent has failed to assign error to any of the trial court's findings of fact. Therefore, all of the trial court's findings of fact are deemed conclusive on appeal. *Draughon v. Harnett Cty Bd. of Educ.*, 166 N.C. App. 449, 451, 602 S.E.2d 717, 718 (2004) (citing *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991)).

Respondent assigns error to the trial court's conclusion of law that respondent's consent to petitioner's adoption of K.K.F. was not procured by fraud. Conclusions of law are generally upheld when they are supported by the findings of fact. *In re Montgomery*, 311 N.C. 101, 111, 316 S.E.2d 246, 253 (1984).

Consent to an adoption is void when "[b]efore the entry of the adoption decree, the individual who executed the consent establishes

by clear and convincing evidence that [the consent] was obtained by fraud or duress[.]" N.C. Gen. Stat. § 48-3-609(a)(1) (2003). The elements of fraud are:

> "(1) That [petitioner] made a representation relating to some material past or existing fact; (2) that the representation was false; (3) that when [s]he made it, [petitioner] knew that the representation was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that [petitioner] made the representation with intention that it should be acted upon by [respondent]; (5) that [respondent] reasonably relied upon the representation and acted upon it; and (6) that [respondent] thereby suffered injury."

*In re Baby Boy Shamp*, 82 N.C. App. 606, 612, 347 S.E.2d 848, 852 (1986), *disc. review denied*, 318 N.C. 695, 351 S.E.2d 750 (1987) (quoting *Keith v. Wilder*, 241 N.C. 672, 675, 86 S.E.2d 444, 446 (1955)).

Respondent argues that petitioner made a false representation when petitioner failed to reveal that, prior to obtaining respondent's consent to the adoption, she had accessed "Internet divorce sites," and she had told a counselor and a physician that she was planning on separating from respondent. We disagree. We first find that respondent cannot rely on the possibility that petitioner had accessed "Internet divorce sites" in establishing that petitioner made a false representation. The trial court's finding of fact which, as mentioned earlier, is conclusive and binding on this Court, states that no evidence was presented regarding the content of the "Internet divorce sites." Therefore, assuming *arguendo* that petitioner did in fact access "Internet divorce sites," the lack of evidence regarding the content of the web sites precludes a finding that, by visiting the web sites, petitioner made any false representations about her intentions or the status of the marriage.

In addition, the trial court found, and the evidence was clear, that respondent was fully aware of the precarious status of the marriage. Petitioner repeatedly indicated to respondent that she was unhappy in the marriage. Respondent and petitioner had several arguments about respondent's drug use. Petitioner had left the marital home and separated from respondent for several days in May 2001, and again for one night on 15 June 2002. Furthermore, the trial court specifically found that respondent "knew or should have known that there was some possibility that the parties would separate." We find that

the trial court's findings of fact support its conclusions of law that petitioner did not fraudulently conceal any material facts from respondent and that she did not procure respondent's consent to the adoption through fraud.

Respondent next assigns as error the trial court's failure to apply a constructive fraud standard in determining whether the consent to the adoption was procured by fraud. Petitioner contends that a consent to an adoption is void for fraud only upon a showing of actual fraud, and that a showing of constructive fraud is insufficient. Assuming *arguendo*, without deciding, that a showing of constructive fraud is sufficient to void a consent to adoption, we find that respondent has failed to show that constructive fraud occurred.

A claim for constructive fraud is shown by establishing "(1) a relationship of trust and confidence, (2) that [petitioner] took advantage of that position of trust in order to benefit [herself], and (3) that [respondent] was, as a result, injured." *White v. Consolidated Planning, Inc.*, 166 N.C. App. 283, 294, 603 S.E.2d 147, 156 (2004), *disc. review denied*, 359 N.C. 286, 610 S.E.2d 717 (2005). "Put simply, a [respondent] must show (1) the existence of a fiduciary duty, and (2) a breach of that duty." *Keener Lumber Co. v. Perry*, 149 N.C. App. 19, 28, 560 S.E.2d 817, 823, *disc. review denied*, 356 N.C. 164, 568 S.E.2d 196 (2002).

Respondent claims that petitioner breached the fiduciary duty between spouses when petitioner failed to disclose that she had told a counselor and a physician that she was separating from respondent. We disagree. Petitioner had left respondent twice before and petitioner had confronted respondent numerous times about her unhappiness with his drug use. Petitioner repeatedly told respondent that she was unsatisfied in the marriage and demonstrated, through leaving him twice before, that she was willing and able to separate from him. Therefore, petitioner did not breach her fiduciary duty to respondent and did not commit constructive fraud.

The final assignment of error addressed in respondent's brief contends that public policy opposes a stepparent adoption when the stepparent, at the time of filing the petition for adoption, does not intend to stay in the marriage with the legal parent. Respondent argues that the public policy of North Carolina is to " 'endeavor[] to maintain the marital state[,]' " *Vann v. Vann*, 128 N.C. App. 516, 519, 495 S.E.2d 370, 372 (1998) (quoting *Bruce v. Bruce*, 79 N.C. App. 579, 583, 339 S.E.2d 855, 858, *disc. review denied*, 317 N.C. 701, 347 S.E.2d

36 (1986)), and that this policy is not served by allowing a stepparent adoption under these facts.

While we acknowledge the State's interest in preserving marital relations, the State also has a stated public policy interest in providing children with stable and permanent homes. In Chapter 48 of the North Carolina General Statutes, our General Assembly has asserted that:

(a) The General Assembly finds that it is in the public interest to establish a clear judicial process for adoptions, to promote the integrity and finality of adoptions, to encourage prompt, conclusive disposition of adoption proceedings, and to structure services to adopted children, biological parents, and adoptive parents that will provide for the needs and protect the interests of all parties to an adoption, particularly adopted minors.

(b) With special regard for the adoption of minors, the General Assembly declares as a matter of legislative policy that:

(1) The primary purpose of this Chapter is to advance the welfare of minors by (i) protecting minors from unnecessary separation from their original parents, (ii) facilitating the adoption of minors in need of adoptive placement by persons who can give them love, care, security, and support, (iii) protecting minors from placement with adoptive parents unfit to have responsibility for their care and rearing, and (iv) assuring the finality of the adoption[.]

. . . .

(c) In construing this Chapter, the needs, interests, and rights of minor adoptees are primary. Any conflict between the interests of a minor adoptee and those of an adult shall be resolved in favor of the minor.

(d) This Chapter shall be liberally construed and applied to promote its underlying purposes and policies.

N.C. Gen. Stat. § 48-1-100 (2003).

We find that the public policy of North Carolina as expressed in Chapter 48 mandates that respondent's motion to dismiss petitioner's petition be denied. Chapter 48 encourages the finality of adoptions

and the "prompt, conclusive disposition of adoption proceedings[.]" N.C. Gen. Stat. § 48-1-100(a). Chapter 48 also requires that the interests of the child take precedence over the interests of anyone else, including those who are parties to the marriage. N.C. Gen. Stat. § 48-1-100(c). In this case, K.K.F. has been raised by petitioner since January 2000 and considers petitioner his mother. Furthermore, a decree of adoption was entered on 30 October 2003 establishing petitioner as K.K.F.'s adoptive mother. In order to promote the public policy as stated in Chapter 48, we affirm the trial court's order denying respondent's motion to dismiss petitioner's petition.

We deem those assignments of error not addressed in respondent's brief to be abandoned. N.C. R. App. P. 28(b)(6).

Affirmed.

Judges TYSON and GEER concur.